Robert C. WILLIAMS, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–9502–CR–248.

Supreme Court of Indiana.

Aug. 2, 1996.

Kay A. Beehler, Indianapolis, for appellant.

Pamela Carter, Attorney General, James D. Dimitri, Deputy Attorney General, Indianapolis, for appellee.

SHEPARD, Chief Justice.

Appellant Robert C. Williams appeals his convictions arising out of his role in killing Anthony Gaddis, a police informant. We affirm.

After trial by jury, Williams stood convicted of murder, Ind.Code Ann. § 35–42–1–1 (West Supp.1995); conspiracy to commit murder, Ind.Code Ann. § 35–41–5–2 (West 1986); and assisting a criminal, a class C felony, Ind.Code Ann. § 35–44–3–2 (West 1986). The jury also found that he was an habitual offender. Ind.Code Ann. § 35–50–2–8 (West Supp.1994). The trial court sentenced him to forty years for murder and added twenty years for aggravating circumstances. This sentence was further enhanced by thirty years for the habitual offender finding. The court ordered a concurrent four-year term for assisting a criminal.

The evidence at trial showed that Anthony Gaddis was assisting the police in investigating a suspected drug dealer named Kevin Vaden. Based on Gaddis's purchase of illegal drugs from Vaden, the state charged him with two drug-related offenses. In response, Vaden arranged with Williams and his stepbrother to kill Gaddis and paid them with drugs and money. They did not follow through, but agreed to assist Vaden in committing the crime himself.

The day before Vaden's trial, he and Williams hid in an apartment parking lot, awaiting Gaddis' return. Williams chose an advantageous spot to lie in wait and observe Gaddis's arrival. As Gaddis exited his car, Vaden stepped forward and shot him several times in the head. Vaden and Williams escaped the scene together, Williams working to calm Vaden, whom he later described as "frantic." Vaden gave Williams the weapon, and Williams disposed of it by throwing it down a sewer.

## I. Admission of the Tapes

Williams contends the trial court erred by admitting two tapes of conversations Williams had with a police informant who died before Williams' trial. These conversations were recorded at Williams' residence through the use of a body microphone. In

each, Williams told the informant about his involvement in the crime, mentioning among other things that Vaden still owed him some drugs as payment for his help.

■ Williams claims that the statements and questions made by the informant were hearsay and that the admission of those statements violated his Sixth Amendment right to confrontation. It is apparent, however, that the informant's contributions to the conversation were not admitted for the truth of the matters asserted.[1] Indeed, the informant's statements were largely designed to prompt Williams himself to speak.[2] It was the statements made by Williams that really constituted the evidentiary weight of the conversation. We are satisfied, as the State argues, that the informant's statements were not hearsay. That being so, Williams' claims under the Fifth Amendment and under Art. I, sec. 13 of the Indiana Constitution also fail.

■ Williams also argues that the State did not provide a sufficient foundation to assure that the tapes were authentic, that is, that the persons speaking on the tape were actually Williams and the informant. Both the tapes were made under the supervision of the police who were working with the informant. A police detective and a state trooper who assisted the informant both testified that they had conversed with the informant and with Williams (such as when Williams and the informant came out of Williams' house and approached the unmarked car in which the detective was sitting.) They testified that they recognized the voices on the tape as those of Williams and the informant.

■ Williams argues that the officers were not voice recognition experts and that their experience in hearing Williams' voice was too limited to support their authentication of the tapes. These arguments go to the weight of the evidence before the jury and not to their admissibility. *Huspon v. State*, 545 N.E.2d 1078 (Ind.1989).

■ Williams also asserts that admission of the tapes violated his Fifth Amendment privilege against compulsory self-incrimination. The use of an informant under circumstances such as those in this case does not constitute compulsion. As the U.S. Supreme Court has said, "Where a suspect does not know that he is speaking to a government agent there is no reason to assume the possibility that the suspect might feel coerced." *Illinois v. Perkins*, 496 U.S. 292, 299, 110 S.Ct. 2394, 2398, 110 L.Ed.2d 243 (1990).

■ Similarly, appellant's argument that his statements to the informant might have been involuntary because he might have been under the influence of illegal drugs fails because he has not demonstrated the requisite governmental coercion. *Colorado v. Connelly*, 479 U.S. 157, 170, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986) ("The sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion. Indeed, the Fifth Amendment privilege is not concerned 'with moral and psychological pressures to confess emanating from sources other than official coercion.' The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on 'free choice' in any broader sense of the word.") (citations omitted).

## II. Sufficiency of the Evidence

Williams argues that without the tapes on which he described his participation in the

---

1. Ind.Evidence Rules 801–02 prevent the admission of statements, "other than [those] made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind.Evid.R. 801.

2. Quite a lot of the informant's role consisted of statements like "Right" and "Uh-hum" or "Oh, Okay" in between Williams' enthusiastic telling of his tale. The more substantive statements by the informant tended to take this sort of form:

    C.I. Well how, how did Vaden, how Vaden know where he was?

R.W. Found his address some where, found where he was at somehow. You know, I'm more so like the coaches (sic) teacher right?

*   *   *   *   *   *

C.I. How many times he shoot him?
R.W. He hit him about 4 times, I think he hit him about 3 times in the head, they had in the paper, said, a brutal killing,professional, and you know, he done it like a professional,cause I was there watching him.
R. at 891–92.

crime, the evidence is insufficient to support the conviction. Because the tapes were correctly admitted, this contention fails.

### III. The Sentence

■ Williams argues that his sentence is excessive and manifestly unreasonable. The trial court rejected the parties' proposed sentence of forty-five years, finding that aggravating circumstances warranted enhancing Williams' sentence for murder to sixty years. The court cited Williams' lengthy criminal record, dating back to 1961, and particularly noted the fact that his record included a prior homicide. The court added the standard thirty years for Williams' status as an habitual offender. We cannot conclude that this sentence was unreasonable in light of the offense and the character of the offender. Ind. Appellate Rule 17.

### IV. Conclusion

The trial court did not err. We affirm the convictions.

DeBRULER, DICKSON, SULLIVAN, and SELBY, JJ., concur.