Nathaniel L. WILLIAMS,
Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 18A02–0911–CR–1092.

Court of Appeals of Indiana.

July 16, 2010.

Cara Schaefer Wieneke, Wieneke Law Office, LLC, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, James E. Porter, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Nathaniel L. Williams appeals his convictions for two counts of dealing in cocaine, each as a Class A felony; two counts of possession of a controlled substance, each as a Class C felony; and one count of maintaining a common nuisance, a Class D felony, following a jury trial. Williams raises the following three issues for our review:

1. Whether the trial court violated Williams's federal or Indiana rights to confront witnesses when it admitted into evidence the recorded statements of a confidential informant, which were made during two controlled drug buys;

2. Whether the trial court failed to admonish the jury that the confidential informant's recorded statements were not being offered to prove the truth of the matter asserted; and

3. Whether the court violated Williams's right to be free from double jeopardy under the Indiana Constitution when it entered two

convictions for possession of the same controlled substance, even though that controlled substance was found in two different brands of medication.

We hold that the statements of the confidential informant in this case were not hearsay and, therefore, Williams was not entitled to cross examine the confidential informant under the federal and Indiana constitutions. We also hold that Williams did not preserve for appellate review his claim that the trial court failed to admonish the jury. Finally, we hold that the State's evidence demonstrated that Williams possessed only one controlled substance. Accordingly, we affirm in part, reverse in part, and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

On April 21, April 27, and May 6, 2009, Muncie Drug Task Force ("DTF") officers hired, for pay, a confidential informant ("C.I.") to purchase cocaine from Williams at Williams's home. The C.I. was Williams's uncle. For each of the purchases, the DTF provided the C.I. with purchase money and wired him with an audio device that recorded the C.I.'s conversations and simultaneously transmitted them to nearby, listening DTF officers. After each buy, the C.I. immediately returned to the DTF officers, who recovered cocaine from the C.I.

Following the May 6 buy, the DTF officers obtained a search warrant for Williams's home. The officers seized digital scales covered in cocaine residue, the May 6 purchase money, a bag containing two pills of Vicodin, and a bag containing seven pills of Anexsia.[1] Vicodin and Anex-

sia each contain the controlled substance dihydrocodeinone. On May 13, 2009, the State charged Williams with three counts of dealing in cocaine, each as a Class A felony; two counts of possession of a controlled substance, each as a Class C felony; and one count of maintaining a common nuisance, a Class D felony.

The court held Williams's jury trial on October 6. At the trial, the State called numerous DTF officers to testify. The State's first witness, DTF Officer Allen Williams, testified to his unit's general procedures for controlled drug buys. The State's second witness, DTF Officer Nathan Sloan, testified that he was involved in the April 21 controlled buy. Specifically, Officer Sloan stated that, consistent with the DTF's general procedures, he searched the C.I.'s person and vehicle before the controlled buy, closely monitored the C.I. in transit to Williams's house, and witnessed Williams let the C.I. into the residence. Upon the C.I.'s exit from Williams's house, Officer Sloan and another officer recovered a "white[,] rocklike substance" from the C.I. that field-tested positive as cocaine. Transcript at 98. The State then called DTF Officer Bret Elam. Officer Elam was present during the April 21 controlled buy and corroborated Officer Sloan's testimony.

Officer Elam was also present during the April 27 controlled buy and testified that the DTF officers at the second controlled buy followed the same protocol they had used during the April 21 controlled buy. During the April 27 buy, Officer Elam witnessed the C.I. enter Williams's residence and leave a few minutes later. The C.I. then met the DTF officers at a predetermined location and

1. Vicodin is manufactured by Abbott Laboratories. Anexsia is manufactured by Mallinck-   rodt Pharmaceuticals.

surrendered to the officers "a clear baggie" containing cocaine. *Id.* at 126, 138.

Officer Elam then testified about the May 6 controlled buy. For that third buy, DTF officers again followed "the same procedure as far as [the] search of [the C.I.'s] person and the car." *Id.* at 186. The officers again followed the C.I. to Williams's home and, once the C.I. exited the residence, they met him at a predetermined location where he surrendered "[t]hree clear pieces of plastic containing an off-white[,] rocklike substance," which field-tested positive as cocaine. *Id.* at 192, 197. Officer Elam's testimony regarding the April 27 and May 6 controlled buys was corroborated by both Officer Williams and DTF Officer Jeff Pease. The State later had the items seized from Williams's house pursuant to the search warrant admitted into evidence.

In addition to the testimony of the numerous DTF officers, the State offered the recordings from the C.I.'s audio device into evidence. The State asked each of the DTF officers whether he had heard those recordings, either through the live transmission or later, and, if so, to describe the contents of the recorded conversations. Each DTF officer had heard the recordings and testified to their contents. Williams objected to the State's request to admit the recordings and to the officers' respective testimonies on multiple grounds, including that the C.I.'s recorded statements violated his right to confront the C.I. The State responded that the C.I.'s statements were not being offered to prove the truth of the matter asserted but to give context to Williams's own recorded statements. Williams did not dispute that his voice could be heard on the recordings and that his statements in those recordings were admissible. And, his objections notwithstanding, Williams cross examined the officers on whether the C.I. was paid for his services, whether the C.I. had used this opportunity to avoid prosecution in an unrelated case, whether the C.I. was related to Williams, whether the C.I. had ever lived at Williams's residence or had had access to Williams's residence, and whether the cocaine found on the C.I. could have belonged to the C.I. and been kept by him at Williams's residence.

The trial court overruled Williams's objections and permitted the jury to hear the recordings. In doing so, the court "advise[d] the jury that ... what the confidential informant said is being offered to give you context for the whole conversation. It's not being offered by the State to prove the truth of the matter." *Id.* at 191. In relevant part, those recordings demonstrated the following statements:

[Recording from the April 21 Controlled Buy]

[C.I. drives to Williams's house and knocks on the door.]

[C.I.] Hey Nate.

[Door opens.]

[Williams] (inaudible) ... you gotta be quiet, you motherf\*\*\*er, you can't be speaking all loud and sh\*t ... (inaudible) ... you can't be speaking like that. You can't play, know what I'm saying. Damn, I'm going back in the house ... (inaudible) ... don't be doing all that ... (inaudible).

[Inaudible.]

[Williams] Ok, alright.

[C.I.] Nate, I gotta, I gotta, I gotta bill ... look out for me ... about a hundred.

[Williams] (inaudible)

[C.I.] (inaudible) ... look at the scale, though ... (inaudible) ... I'm gonna trust your eyeball.

[Williams] (inaudible)

[C.I.] Alright, Nate ... (inaudible) ... gonna get it back right Nate.

[About three minutes of silence.]

[Williams] (inaudible)

[C.I.] (inaudible)

[Williams] I gotta cut it off, I gotta cut it off.

[C.I.] (inaudible)

[Williams] (inaudible) . . . you're not gonna change your mind though.

[C.I.] No, I'm not gonna change my mind, know what I'm saying . . . (inaudible).

[Williams] (inaudible) . . . I gotta cut it off, I gotta cut it off.

[C.I.] (inaudible) . . . look out for me.

[Williams] (inaudible)

[C.I.] (inaudible)

[Williams] (inaudible)

[C.I.] (inaudible) . . . my man, my man.

[C.I. exits house and walks back to car.]

\*　　\*　　\*

[Recording from the May 6 Controlled Buy]

[C.I. knocks on door.]

[Door opens.]

[Williams] (inaudible)

[C.I.] (inaudible)

[Williams] When we're done could you put that trash, that trash bag outside the door in the garbage can for me?

[C.I.] Yeah.

[Williams] (inaudible)

[Williams] How much soft?

[C.I.] What I asked you for earlier, what I asked you for earlier, hard.

[Williams] All hard?

[Williams] (inaudible)

[C.I.] Um-hm. Yeah.

[Williams] Ok. Ok, well I'm going to have to give you a little bit of that other stuff . . . (inaudible) . . . hold on, let me see . . . I think I'm going to have to give you a little bit of that one hard because, uh . . . .

[C.I.] Alright. You do what you do, man.

[About two minutes of silence.]

[C.I.'s cell phone rings, and he answers] Hello? I'll call you back . . . no . . . yeah . . . alright, bye.

[About ninety seconds of silence.]

[C.I.] Man, I thought you had to go to Columbia or something, man, damn.

[C.I.] (inaudible)

[Williams] (inaudible)

[C.I.] (inaudible)

[Williams] That's why I dropped that . . . (inaudible).

[C.I.] Alright, alright, alright.

[Williams] (inaudible)

[C.I.] Alright.

[Williams] (inaudible)

[C.I.] Alright . . . (inaudible)

[Inaudible portion.]

[Williams] (inaudible)

[C.I.] (inaudible) . . . the pill . . . I don't know, I need something bad, man . . . (inaudible) . . . man, that's what I need . . . you hear me?

[Williams] Um-hm.

[C.I.] (inaudible)

[Inaudible portion.]

[C.I.] Alright, be careful man.

[C.I. walks outside.]

[Williams] (inaudible)

[C.I.] Huh? This one, too? Alright.

*See* Appellant's Br. at 7–9 (quoting State's Exhs. 2, 11).

During closing, the local prosecutor directed the jury to listen to the audiorecordings of the controlled buys. At one point, he stated as follows:

> The defense argues that . . . it would've been best if we could've had the C.I. here because he's the best evidence.

Well, he's not the best evidence.... Why? Because people get nervous on the stand. They might forget. Memories fade after time. They might say something that they didn't mean to say because of a clever attorney who can put words in their mouth under cross examination.... They have human frailties. Your best evidence that didn't change one iota from the day these crimes took place until today in the courtroom is that tape, even with some of the inaudible parts. That is your best evidence because it can't be tricked. Its memory doesn't fade. It isn't nervous. Use the tapes.

*Id.* at 517. The prosecutor then described how the recordings, especially the lengthy periods of silence interposed in the conversations, were evidence of Williams's alleged dealings in cocaine. *Id.* at 517–18.

After deliberating, the jury found Williams guilty of the two Class A felony allegations that pertained to the April 21 and May 6 controlled buys, as well as both of the Class C felony allegations. And although the jury acquitted Williams of the Class A felony allegation pertaining to the April 27 controlled buy, the jury found him guilty of the Class D felony charge, which alleged that Williams was maintaining a common nuisance at his residence by "offering for sale and/or selling and/or delivering a controlled substance, to-wit: ... Cocaine." Appellant's App. at 17, 67. The court entered its judgment and sentence on each conviction. This appeal ensued.

### DISCUSSION AND DECISION

#### Issue One: Confrontation

■■■■ Williams first asserts that the trial court denied him his Sixth Amendment right to confront and cross examine the C.I. when it admitted into evidence the C.I.'s statements in the April 21 and May 6 recordings. In 2004, the Supreme Court of the United States held that, "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Crawford v. Washington,* 541 U.S. 36, 68–69, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Out-of-court, testimonial statements are admissible at trial only if the declarant is unavailable to testify and the defendant has had a prior opportunity to cross examine the declarant.[2] *Id.* at 59, 124 S.Ct. 1354.

■■■■ "Testimonial" statements are, among other things:

"ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially;" "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions;" and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."

*Jackson v. State,* 891 N.E.2d 657, 659 (Ind. Ct.App.2008) (discussing *Crawford,* 541 U.S. at 51–52, 124 S.Ct. 1354), *trans. denied.* However, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford,* 541 U.S. at 59 n. 9, 124 S.Ct. 1354. Thus, if a statement is either nontestimoni-

---

**2.** The State does not suggest that the C.I. was unavailable to testify at trial or that Williams had a prior opportunity to cross examine the C.I.

al or nonhearsay,[3] the federal Confrontation Clause will not bar its admissibility at trial.

Recently, this court held that a C.I.'s statements recorded in the course of a controlled drug buy were not offered by the State to prove the truth of the matter asserted and, therefore, were "not hearsay." *Lehman v. State*, 926 N.E.2d 35, 38 (Ind.Ct.App.2010), *not yet certified.*[4] Specifically, this court, relying on a pre–*Crawford* decision of the Indiana Supreme Court, held that the C.I.'s statements were not hearsay because they "were largely designed to prompt [the defendant] to speak and[,] as such, it was the statements made by [the defendant] that really constituted the evidentiary weight of the conversation." *Id.* (discussing *Williams v. State*, 669 N.E.2d 956, 957–58 (Ind.1996)). Agreeing with that analysis but suggesting "perhaps a stronger explanation," Judge Vaidik stated that "[the C.I.'s] statements constituted legally operative conduct.[5] His words ... consummated the illegal sale of drugs. The statements were thus not hearsay." *Id.* at 42 (Vaidik, J., concurring in result) (citations omitted).

We agree with the lead opinion in *Lehman* that the C.I.'s recorded statements during the two controlled drug buys were not offered by the State to prove the truth of the C.I.'s statements. In the case relied on by this court, our Supreme Court discussed a similar factual scenario as follows:

[The defendant] contends the trial court erred by admitting two tapes of conversations [he] had with a police informant who died before [the defendant's] trial. These conversations were recorded at [the defendant's] residence through the use of a body microphone. In each, [the defendant] told the informant about his involvement in the crime, mentioning among other things that [his co-conspirator] still owed him some drugs as payment for his help.

[The defendant] claims that the statements and questions made by the informant were hearsay and that the admission of those statements violated his Sixth Amendment right to confrontation. It is apparent, however, that the informant's contributions to the conversation were not admitted for the truth of the matters asserted. Indeed, the informant's statements were largely designed to prompt [the defendant] himself to speak. *It was the statements made by [the defendant] that really constituted the evidentiary weight of the conversation.* We are satisfied, as the State argues, that the informant's statements were not hearsay. That being so, [the defendant's] claims under the Fifth Amendment and under Art. I, sec. 13 of the Indiana Constitution also fail.

---

3. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Angleton v. State*, 686 N.E.2d 803, 809 (Ind.1997) (quoting Ind. Evidence Rule 801). "Statements not admitted to prove the truth of the matter do not run afoul of the hearsay rule—they are not hearsay." *Id.*

4. This court's opinion in *Lehman* was handed down one day after the State filed its Appellee's Brief. Accordingly, we ordered the parties to file supplemental briefs discussing *Lehman's* applicability to this appeal. We thank counsel for their prompt filings and cogent analyses.

5. Legally operative conduct, or a "verbal act," is "an utterance of an operative fact that gives rise to legal consequences." 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 801.11[3] at 801–18 to – 21 (Joseph M. McLaughlin, ed., Matthew Bender 2nd ed. 2010). Examples include defamation, oral contracts, extortion, conspiracy, entrapment, threats, bribes, misrepresentation, and notice of liability. *See id.*

*Williams,* 669 N.E.2d at 957–58 (emphasis added; footnotes omitted).

■■ While our Supreme Court's decision in *Williams* and the lead opinion in *Lehman* limited their discussions to Indiana evidentiary law, nonetheless the conclusions that the statements are nonhearsay have a constitutional dimension. Again, the Confrontation Clause does not apply to nonhearsay statements, even if those statements are testimonial. *See Crawford,* 541 U.S. at 59 n. 9, 124 S.Ct. 1354. Here, as in *Williams* and *Lehman,* the C.I.'s recorded statements during the controlled drug buys were nonhearsay because those statements merely provided context for Williams's own recorded statements as well as the lengthy periods of silence that occurred during the transaction. "Statements providing context for other admissible statements are not hearsay because they are not offered for their truth." *United States v. Tolliver,* 454 F.3d 660, 666 (7th Cir.2006), *cert. denied,* 549 U.S. 1149, 127 S.Ct. 1019, 166 L.Ed.2d 768 (2007).

In response, Williams contends on appeal that "[t]he C.I.'s statements did not provide context for Williams's statements because the vast majority of Williams's statements were inaudible." Appellant's Br. at 10. But while there are a large number of inaudible statements, that does not negate the contextual effect of the C.I.'s statements. Further, the periods of silence on the recordings suggest that cocaine is being cut and weighed by Williams, and the C.I.'s statements provide context for that silence just as much as they do for Williams's own admissible statements.

Further, we do not think that Judge Vaidik's additional analysis in *Lehman* applies to this case. We share her concern that the context exemption from the hearsay rule is not and should not be an end-

run around the rule, and we acknowledge that there is Florida case law that supports the use of the legally operative conduct exemption in similar circumstances. *See, e.g., Decile v. State,* 516 So.2d 1139, 1140 (Fla.Dist.Ct.App.1987). But, as a matter of Indiana evidence law, our Supreme Court has held that a C.I.'s statements in these circumstances are context evidence, not legally operative conduct. As our Supreme Court said, "It was the statements made by [the defendant] that really constituted the evidentiary weight of the conversation." *Williams,* 669 N.E.2d at 958. Because the C.I.'s statements, while facilitating the illegal sale of drugs, were not in themselves the illegal sale, we follow the law as stated by our Supreme Court.

Neither are the C.I.'s statements in this case analogous to the statements of confidential informants discussed in the case law cited by Williams. In *United States v. Cromer,* 389 F.3d 662, 676–79 (6th Cir. 2004), a C.I. gave a tip of the defendant's illegal activity to a police officer, which included the defendant's name and a physical description of his appearance. At the ensuing trial, the officer testified about the contents of that tip, thereby implicating the defendant through the C.I.'s statements. And in *Ray v. Boatwright,* 592 F.3d 793, 796–97 (7th Cir.2010), the Seventh Circuit held that the Confrontation Clause "prevent[s], even in a joint trial, the admission of a confession by a co-defendant that implicates the other accused" when the co-defendant is not available for cross examination. Here, unlike *Cromer* and *Boatwright,* the C.I.'s statements were made to Williams and in the course of controlled drug buys.

Finally, Williams asserts that his right "to meet the witnesses face to face" under Article I, Section 13 of the Indiana Constitution was likewise violated. Appellant's

Br. at 11 (quoting Ind. Const. art. I, § 13). But, as discussed above, our Supreme Court rejected that argument in *Williams,* 669 N.E.2d at 958. Thus, we must reach the same conclusion here. Williams's additional claim under Article I, Section 13 of the Indiana Constitution therefore fails.

### Issue Two: Admonishment

■ Williams also argues that the trial court failed to properly admonish the jury that the C.I.'s recorded statements were not being offered to prove the truth of the matter asserted. But Williams does not provide a citation to the record that demonstrates where his defense counsel specifically requested such an admonishment. As such, he has waived this issue. Ind. Appellate Rule 46(A)(8)(a); *Flowers v. State,* 738 N.E.2d 1051, 1058 (Ind.2000) ("Failure to request an admonishment results in a waiver of the issue for appellate review."). In any event, the trial court did provide at least one such admonishment. *See* Transcript at 191. In light of that admonishment and Williams's waiver of the issue, we will not consider Williams's additional assertion that "[a]n instruction limiting the jury's consideration of the evidence should have been given *each* time *before* the evidence was published to the jury." Reply Br. at 9.

### Issue Three: Double Jeopardy

■ Last, Williams contends that his two Class C felony convictions for possession of a controlled substance violated his right to be free from double jeopardy. As we have stated (in yet another unrelated *"Williams"* case):

> In *Richardson v. State* (1999) Ind., 717 N.E.2d 32, our Supreme Court established a two-part test for analyzing double jeopardy claims under the Indiana Constitution and concluded:
>
> > "two or more offenses are the 'same offense' in violation of Article I, Sec-

tion 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson, supra* at 49.

> Thus, even if there was no double jeopardy violation in the present case based upon the essential statutory elements of the crimes of forgery and theft, a violation may still have occurred if the actual evidence presented at trial demonstrates that each offense was not established by separate and distinct facts. The defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

*Williams v. State,* 892 N.E.2d 666, 668–69 (Ind.Ct.App.2008) (some citations and quotations omitted), *trans. denied.*

To prove that Williams possessed a controlled substance, as a Class C felony, the State was required to show beyond a reasonable doubt that Williams, "without a valid prescription . . ., knowingly or intentionally possesse[d] a controlled substance . . . classified in schedule I, II, III, or IV . . . within one thousand (1,000) feet of . . . a public park. . . ." Ind.Code § 35–48–4–7(a). Count 4 of the State's charging information alleged that "Williams, while within 1000 feet of a public park . . . did knowingly or intentionally possess Vicodin ES listed in Schedule III. . . ." Appellant's App. at 15. And Count 5 of the State's charging information alleged that "Williams, while within 1000 feet of a public park . . . did knowingly or intentionally possess Anexsia listed in Schedule III. . . ." *Id.* at 16.

During the trial, the State introduced evidence seized from Williams's house, pursuant to the State's search warrant, which showed that Williams had Vicodin and Anexsia in his possession inside his house. The State's forensic expert testified that she tested the two Vicodin pills and the seven Anexsia pills separately. For both sets of tests, she determined that the pills each contained dihydrocodeinone and acetaminophen. She then testified that "[d]ihydrocodeinone is a controlled substance in Schedule III." Transcript at 382–83; see I.C. § 35–48–2–8(e)(4). The forensic expert did not testify as to the respective concentrations of dihydrocodeinone in Vicodin and Anexsia,[6] and neither "Vicodin" nor "Anexsia" appears in Schedule III. See I.C. § 35–48–2–8.

There is no dispute on appeal that, since the State charged Williams twice under the same statute, the statutory elements of those two offenses are identical. The parties also do not dispute that the jury used the same evidence to establish each element of Count 4 with the corresponding element of Count 5, with the exception of the "controlled substance" element. Thus, the only dispute on appeal is whether the State used the same evidence to twice show a Schedule III controlled substance. We hold that it did.

Again, it is a crime in Indiana to, "without a valid prescription ..., knowingly or intentionally possess[ ] a controlled substance ... classified in schedule I, II, III, or IV...." I.C. § 35–48–4–7(a). The amount of the controlled substance that is possessed is not an element of that crime; rather, the offense is committed by mere possession of a controlled substance. Here, the controlled substance Williams possessed was dihydrocodeinone. It was not "Vicodin" or "Anexsia." That Williams possessed dihydrocodeinone in one pill or nine, or under one brand name or two, is irrelevant to the question of whether he possessed dihydrocodeinone. Further, there is no dispute that Williams possessed dihydrocodeinone in one place and at one time. That is one crime.

Hence, the actual evidence presented at trial demonstrates that Count 4 and Count 5 were not established by separate and distinct facts. Rather, the State relied on the same evidence to establish both of its allegations that Williams had illegally possessed a controlled substance. As such, Williams has demonstrated more than "a reasonable possibility" that the evidentiary facts used by the jury to establish all of the essential elements of one offense were also used to establish all of the essential elements of the other offense, because the exact same facts were used against Williams on both charges. See Richardson, 717 N.E.2d at 53. Thus, by entering convictions on both of the State's Class C felony possession charges, the trial court impermissibly punished Williams twice for the same offense. We, therefore, vacate his conviction and sentence under Count 4 of the State's charging information.[7]

---

**6.** On appeal, Williams asserts that "Vicodin ES ... contain[s] 7.5 milligrams of hydrocodone bitartrate and 750 milligrams of acetaminophen," while "Anexsia ... contain[s] 5 milligrams of hydrocodone bitartrate and 325 milligrams of acetaminophen." Appellant's Br. at 18. In response, the State, "[a]ssuming that the information in [Williams's] brief is accurate," contends that "Vicodin and Anexsia are not identical as the combination of the ingredients differ in amounts." Appel-

lee's Br. at 13. No evidence was introduced at trial regarding the concentration of dihydrocodeinone in Vicodin or Anexsia, and, therefore, we will not consider these arguments on appeal.

**7.** Because we hold that the trial court violated Williams's double jeopardy rights under the Indiana Constitution, we need not consider Williams's additional argument that his federal double jeopardy rights were violated.

## Conclusion

In sum, we hold that the admission of the C.I.'s statements, recorded in the course of two controlled drug buys, did not violate Williams's federal or Indiana rights to confront witnesses. We also hold that Williams did not preserve for appellate review his claim that the trial court failed to properly admonish the jury. Finally, we hold that the trial court improperly entered two judgments of conviction against Williams for the same offense. Hence, we vacate one of Williams's Class C felony convictions and remand for the trial court to correct its records, without a hearing, to reflect the vacation of one Class C felony conviction in accordance with this opinion. In all other respects, we affirm Williams's convictions.

Affirmed in part, reversed in part, and remanded with instructions.

BROWN, J., concurs.

VAIDIK, J., concurs in result with separate opinion.

VAIDIK, Judge, concurring in result.

I concur in the majority opinion but write separately to address several issues surrounding Williams' Sixth Amendment confrontation claim.

The majority concludes that the confidential informant's recorded statements are not hearsay because they only provided context for Williams' admissions during the drug deals. I agree that the C.I.'s statements furnished context for Williams' admissions. I also agree that providing context is recognized as a valid non-hearsay purpose. Accordingly, many courts have held that informants' statements during controlled buys constitute contextual non-hearsay, are thus not offered for their truth, and for that reason pose no Sixth Amendment confrontation problems. *See, e.g., United States v. Van Sach,* 458 F.3d 694, 701–02 (7th Cir.2006); *United States v. Walter,* 434 F.3d 30, 33 (1st Cir.2006); *State v. Smith,* 162 Ohio App.3d 208, 832 N.E.2d 1286, 1291 (2005).

These decisions have drawn criticism, however, for where a defendant's confrontation rights are at issue, admitting out-of-court statements as "context" is somewhat broad and imprecise. At least one noted legal authority calls context a flat-out "bogus theory" which "threatens to undermine the right of confrontation." 30A Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure* § 6371.2 (Supp. 2010).

On the other hand, statements offered solely for context may be admissible on other, more articulable non-hearsay theories. Where an informant's remarks during an illegal sale are introduced as providing "context" for the defendant's own admissible statements, for example, the C.I.'s words, which are so completely integrated into the transaction itself, might be better understood and properly admitted as "legally operative conduct" or "verbal acts." *Id.* § 6371.2 n. 493; see also 2 Kenneth S. Broun, *McCormick on Evidence* § 249 (6th ed. 2006) ("Explanatory words which accompany and give character to the transaction are not hearsay when under the substantive law the pertinent inquiry is directed only to objective manifestations rather than to the actual intent or other state of mind of the actor."); 30B Michael H. Graham, *Federal Practice & Procedure* § 7005 (Interim ed. 2006) ("[I]ncluded in the group of statements comprising operative legal acts are assertions which relate to and characterize a particular act."); *Decile v. State* 516 So.2d 1139, 1139–40 (Fla.Dist.Ct.App.1987) (C.I.'s statement, "I am here, I need eight," followed by defendant's response, "No problem, come inside, I get you rocks," constituted verbal act in prosecu-

tion for cocaine dealing; "[t]he subject statements served to prove the nature of the act as opposed to proving the truth of the alleged statements"). This may especially be the case where, as here, the State not only alleges that the defendant dealt drugs, but also charges the defendant with maintaining a common nuisance by "offering for sale" and/or "selling" narcotics. Appellant's App. p. 17.

I have written separately only to point out that, if there exists a stronger explanation as to why statements do not constitute hearsay, we should identify that reason in lieu of resorting to the "context" justification. Overuse of the context crutch may ultimately disserve *Crawford* and the Sixth Amendment confrontation right.

In all other respects, I concur in the majority opinion.