## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 16 2015, 10:02 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Ginny Maxwell
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael Shanklin,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 16, 2015

Court of Appeals Case No.
49A02-1409-CR-601

Appeal from the Marion Superior Court.
The Honorable Steven R. Eichholtz, Judge.
Cause No. 49G20-1210-FA-73615

**Darden, Senior Judge**

## Statement of the Case

Michael Shanklin appeals from his conviction of five counts of dealing in cocaine or a narcotic drug, two counts as Class A felonies and three counts as Class B felonies, all pursuant to Indiana Code section 35-48-4-1 (2006), and one

count of possession of marijuana, hash oil, or hashish, a Class A misdemeanor, Indiana Code section 35-48-4-11(1) (2012).  We affirm.

# Issues

Shanklin presents two issues for our review, which we restate as:

> I.  Whether the trial court's admission of audio recordings of phone calls and conversations between Shanklin and a confidential informant violated the Confrontation Clause.
>
> II.  Whether destroyed evidence was materially exculpatory such that its absence from trial violated Shanklin's due process rights.

# Facts and Procedural History

On three different occasions in October 2012, Shanklin sold cocaine to a confidential informant (CI) who was working with Detective Dings of the Metropolitan Drug Task Force.  On October 2, 2012, Detective Dings made a photocopy of buy money and searched the CI and her vehicle for money, drugs, and weapons.  Finding none of these things, Detective Dings equipped the CI with the buy money and an audio recording device.  The device was activated, and the CI made a call on her cell phone to Shanklin to arrange a meeting.  With Detective Dings following, the CI drove her vehicle to meet Shanklin.  While Detective Dings watched from his vehicle, the CI exited her vehicle and entered Shanklin's vehicle.  The CI then returned to her vehicle and Detective Dings followed her to a meeting place.  When they met, the CI gave Detective Dings a bag containing a substance that appeared to be and was later identified

as cocaine. Detective Dings then retrieved the audio recording device and again searched the CI.

[4] On October 9 and October 23, 2012, Detective Dings, working with the same CI, followed the same protocols that were observed during the buy on October 2. On both occasions, the CI called Shanklin and made arrangements to meet him while recording the phone call on the audio recording device. On October 9, Detective Dings observed the CI park her vehicle directly behind the same vehicle that was involved in the buy on October 2. The CI exited her vehicle and went to stand next to Shanklin's vehicle. Upon completing the buy, the CI met up with Detective Dings and produced a bag of a substance later identified as cocaine. On October 23, Detective Young rode with the CI, and Detective Dings followed and observed. Detective Dings observed Detective Young and the CI park behind a vehicle. The CI exited her vehicle and sat in the front passenger seat of the other vehicle. When the CI returned to her vehicle, she handed Detective Young a bag containing a substance later identified as cocaine. During the buys, additional officers performed surveillance and recorded video of Shanklin.

[5] On October 24, 2012, Detective Dings again had the CI call Shanklin to make arrangements to buy cocaine. A location for the buy was arranged, but before the buy occurred, Shanklin drove away from the location. Officers assisting with surveillance of the buy stopped Shanklin's vehicle because the license plate on the vehicle was registered to another car and the window tint was too dark. Upon stopping the vehicle and arresting Shanklin, the officers searched

Shanklin and found money from one of the previous controlled buys. Shanklin's wife, who was also present in the car, was searched as well. From that search the police recovered from between her buttocks a bag that contained a substance later identified as cocaine.

[6]     A search warrant was then executed on Shanklin's residence, and drugs and drug paraphernalia were found and seized. In addition, in the residence the officers located more of the buy money that was used in one of the controlled buys. Based upon these occurrences, Shanklin was charged with two counts of dealing in cocaine as Class A felonies, two counts of possession of cocaine as Class C felonies, three counts of dealing in cocaine as Class B felonies, three counts of possession of cocaine as Class D felonies, and one count of possession of marijuana as a Class A misdemeanor. At trial, the CI did not testify, but audio recordings of the phone calls and the controlled buys were introduced into evidence over defense counsel's objection. In addition, although the State introduced photographs of the drugs and drug paraphernalia that were seized from Shanklin's residence, it did not introduce the actual drugs and related items because they had been inadvertently destroyed prior to trial. Shanklin was found guilty on all eleven counts but, due to the merger of several of the counts, judgment of conviction was entered only on two counts of dealing in cocaine or a narcotic drug, as Class A felonies; three counts of dealing in cocaine or a narcotic drug, as Class B felonies; and one count of possession of marijuana, hash oil, or hashish, a Class A misdemeanor; and sentenced to an aggregate sentence of thirty years.

# Discussion and Decision

## I. Confrontation Clause

[7] Shanklin first contends that his federal and state constitutional rights to confront and cross-examine the witnesses against him were violated when the trial court admitted audio recordings of phone calls and controlled drug buys[1] between himself and the CI because the CI did not testify at trial. The admissibility of evidence is within the sound discretion of the trial court, and we will not disturb the decision of the trial court absent a showing of abuse of that discretion. *Gibson v. State*, 733 N.E.2d 945, 951 (Ind. Ct. App. 2000). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

[8] Here, we pause to note that although Shanklin claims a violation of his rights under both the Sixth Amendment of the United States Constitution and article I, section 13 of the Indiana Constitution, he presents no authority or independent analysis supporting a separate standard under the state constitution. Therefore, Shanklin has waived any state constitutional claim. *See Abel v. State*, 773 N.E.2d 276, 278 n.1 (Ind. 2002).

---

[1] Exhibit 1 is a DVD containing the audio recordings of phone calls and conversations during drug buys between the CI and Shanklin. The DVD also contains video and still photographs taken by the officers performing surveillance. Shanklin only objected to and claims error with the admission of the portions of Exhibit 1 that contain the recorded phone calls and conversations between himself and the CI.

The Confrontation Clause of the Sixth Amendment to the United States Constitution prohibits the admission of an out-of-court statement if it is testimonial, the declarant is unavailable, and the defendant had no prior opportunity to cross-examine the declarant. *Thornton v. State*, 25 N.E.3d 800, 803 (Ind. Ct. App. 2015). Testimonial statements include: (1) ex parte in-court testimony or its functional equivalent such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pre-trial statements that declarants would reasonably expect to be used prosecutorially; (2) extra-judicial statements contained in formalized testimonial materials such as affidavits, depositions, prior testimony, or confessions; and (3) statements that were made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. *Williams v. State*, 930 N.E.2d 602, 607 (Ind. Ct. App. 2010), *trans. denied*. However, the Confrontation Clause does not bar the use of testimonial statements for non-hearsay purposes, i.e., for purposes other than establishing the truth of the matter asserted. *Id.* at 607-08, n.3; *cf.* Ind. Evidence Rule 801(c) (defining hearsay as an out-of-court statement offered to prove the truth of the matter asserted). In summary, if a statement is either non-testimonial or non-hearsay, the Confrontation Clause does not prohibit its admission at trial. *Williams*, 930 N.E.2d at 607-08.

Here, the trial court admitted the audio recordings of the phone calls and the conversations during the controlled drug buys between the CI and Shanklin. These recordings of the CI's statements did not constitute hearsay because they

were not offered for the truth of the matter asserted by the CI. The CI's recorded statements merely provided context for Shanklin's statements and involvement. Statements that provide context for other admissible statements are not hearsay because they are not offered for their truth. *Id.* at 609 (quoting *U.S. v. Tolliver*, 454 F.3d 660, 666 (7th Cir. 2006), *cert. denied*, 549 U.S. 1149, 127 S. Ct. 1019, 166 L. Ed. 2d 768 (2007)). Having determined that the CI's statements contained in the audio recordings were not hearsay, we hold that the admission of the recordings was not barred by the Confrontation Clause, and we thus conclude that the trial court did not abuse its discretion in admitting the audio recordings at Shanklin's trial. *See, e.g.*, *Vaughn v. State*, 13 N.E.3d 873, 880 (Ind. Ct. App. 2014) (holding that trial court's admission of audio recordings of telephone calls between CI and defendant to discuss meeting place for controlled drug buys did not violate defendant's right to confront witnesses because recordings were not offered for truth of matter asserted and therefore did not constitute hearsay), *trans. denied*; *Williams*, 930 N.E.2d at 609 (holding that statements of CI, recorded in course of controlled drug buys, were non-hearsay and thus trial court's admission of statements did not violate defendant's right to confront witnesses because statements were not offered to prove truth of CI's statements but rather provided context for defendant's statements); and *Lehman v. State*, 926 N.E.2d 35, 38 (Ind. Ct. App. 2010) (holding no error occurred in admission of audio recordings of conversations between defendant and CI during drug transactions; conversations contained

drug-dealing terminology and CI's statements were not introduced for truth of matter asserted and therefore were not hearsay), *trans. denied*.[2]

## II. Due Process Rights

[11] Although Shanklin labels his second claim as a sufficiency of the evidence issue, his assertions demonstrate otherwise. First, Shanklin contends that his inability to confront and cross-examine the CI at trial caused the evidence against him to be insufficient. He provides no further argument to support this contention, and it appears that this is merely an attempt to relitigate the matter already determined in Issue I. Furthermore, Shanklin does not assert that he requested of the State or sought an order from the court that the CI be made available for an interview deposition. Having determined that the admission of the recordings of phone conversations and drug buys between Shanklin and the CI was not barred by the Confrontation Clause, we decline to address the issue any further.

[12] With regard to Shanklin's final contention, he seems to assert that he was harmed by the absence at trial of the drugs and drug paraphernalia that were seized from his residence during the execution of the search warrant on October 24, 2012. Again, he provides no argument to support this allegation.

---

[2] In his brief, Shanklin argues that his right to confront the witnesses against him was violated in part because he was improperly forced to choose between acquiring the identity of the CI and engaging in plea bargaining with the State. His argument fails. A criminal defendant has no constitutional right to engage in plea bargaining, and the State has no duty to plea bargain. *Bethea v. State*, 983 N.E.2d 1134, 1144 (Ind. 2013).

[13]     To determine whether a defendant's due process rights have been violated by the State's failure to preserve evidence, we must first decide whether the evidence in question is potentially useful evidence or materially exculpatory evidence. *State v. Durrett*, 923 N.E.2d 449, 453 (Ind. Ct. App. 2010). Evidence is potentially useful if no more can be said than that it could have been subjected to testing, the results of which might have exonerated the defendant. *Blanchard v. State*, 802 N.E.2d 14, 26 (Ind. Ct. App. 2004). The State's failure to preserve potentially useful evidence does not constitute a violation of due process rights unless the defendant shows bad faith on the part of law enforcement. *Id.* at 26-27. On the other hand, materially exculpatory evidence is that evidence which possesses an exculpatory value that was apparent before the evidence was destroyed and which is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *Id.* at 27. Failure to preserve materially exculpatory evidence violates due process regardless of whether the State acted in good or bad faith. *Durrett*, 923 N.E.2d at 453.

[14]     At the time the search warrant was executed upon Shanklin's residence on October 24, 2012, the officers seized substances they believed to be drugs in addition to drug paraphernalia. The items that were seized from Shanklin's home were stored in the police evidence room to be kept until trial. At some point, the items that were seized from Shanklin's home were mistakenly destroyed. However, prior to being destroyed, these items had been photographed and had undergone laboratory testing. At the final pre-trial

conference on July 14, 2014, the State informed the trial court that the items had been mistakenly destroyed and that it had informed defense counsel of this fact in January or February 2014. At the pre-trial conference, defense counsel sought exclusion of the photographs and lab reports concerning the destroyed items. After a hearing, the trial court denied defense counsel's motion to exclude the photographs and lab reports because it determined the destruction of the items was "inadverten[t]" and "not by intentional acts or bad faith of the police department." Tr. p. 22.

[15] At trial, the State introduced the photographs of the destroyed items. The photographs depicted different substances alleged to be drugs as well as a marijuana pipe, rubber gloves, a pan, a Pyrex measuring cup containing white residue, and sandwich baggies. The trial court admitted the photographs over defense counsel's objection. The State then presented testimony about the use of the kitchen items that were depicted in the photographs in the crack cocaine-making process. Additionally, the State presented testimony and introduced the lab report of a forensic drug chemist who tested the substances. The chemist testified that he performed the testing on the substances on October 25, 2012, the day after the items were seized, and that the testing revealed the substances to be marijuana and cocaine, and the same was admitted as evidence.

[16] As to whether the destroyed items were either materially exculpatory or potentially useful, Shanklin makes no assertion and provides no argument in support. Upon review, we find no exculpatory value in the destroyed items.

Accordingly, at most, the items might have been potentially useful. However, Shanklin makes no showing of bad faith on the part of the State, and in fact states in his brief that "[t]here is no assertion by Michael Shanklin that the destruction by IMPD was in bad faith." Appellant's Br. p. 10. Thus, having found no bad faith on the part of the State, we conclude that the absence of the items did not violate Shanklin's due process rights, and it was a matter of weight to be determined by the jury. *See Durrett*, 923 N.E.2d at 453-54 (finding no violation of defendant's due process rights where there was no apparent exculpatory value to a van not preserved for trial, no evidence of State's bad faith, and available photographs depicting damage to van were comparable evidence that defendant had failed to establish were insufficient).

## Conclusion

[17] For the reasons stated, we conclude that the trial court's admission of the audio recordings between Shanklin and the CI did not violate Shanklin's rights under the Confrontation Clause. In addition, the absence of the destroyed items at trial did not violate Shanklin's due process rights.

[18] Affirmed.

[19] Riley, J., and Crone, J., concur.