## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 29 2016, 9:01 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

---

ATTORNEY FOR APPELLANT

Patricia Caress McMath
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Brian Reitz
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Lyle D. Tucker,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

January 29, 2016

Court of Appeals Case No.
60A01-1506-CR-532

Appeal from the Owen Circuit Court

The Honorable Erik C. Allen

Trial Court Cause No.
60C01-1406-FA-286

**Vaidik, Chief Judge.**

# Case Summary

[1] Lyle Tucker sold methamphetamine on three separate occasions to informants who were recording the transaction for the Bloomington Police Department. Tucker appeals the trial court's decision to admit these recordings at his trial for dealing in methamphetamine. He argues that the State failed to establish an adequate foundation for the recordings under the silent witness theory and that his rights under the Confrontation Clause were violated. Underlying both arguments is the fact that none of the three informants who recorded Tucker selling them the methamphetamine appeared at trial. However, there is no requirement that the informants testify to adequately establish a foundation under the silent witness theory. Here, the trial court reasonably relied on the testimony of the detectives to establish a foundation for admitting the video recordings. Moreover, the Confrontation Clause applies to testimonial hearsay. The videos at issue in this case are not hearsay. Therefore, we affirm the trial court's admission of the videos into evidence.

# Facts and Procedural History

[2] Between April 24 and June 10, 2014, Bloomington Police Department Detective Erick Teuton used three different informants to conduct three controlled buys of methamphetamine from Lyle D. Tucker. The first buy was executed on April 24 by informant A.B. working in conjunction with Bloomington Police Department Detective Christopher Scott. The second

controlled buy was carried out by informant J.S. on May 27. The final buy, on June 10, was made by informant J.N.

[3] The procedure followed by Detective Teuton for each of the controlled buys was substantially similar. He met the informant at a pre-arranged location. Detective Teuton searched the informant for money or drugs—checking the informant's clothing, hair, and mouth. Because informants J.S. and J.N. drove themselves to Tucker's home, Detective Teuton also searched their cars. No contraband was found in the searches for any of the three informants. After the search, Detective Teuton showed each informant how to hold the recording device that would be used to capture video evidence of the controlled buy. A.B. was given a recording device disguised as a cell phone cover. J.S. and J.N. were each given a recording device disguised as a key fob. All three informants were instructed not to turn the device off and not to touch any buttons on the recording device. Once the training was complete, the informants were given the controlled funds to make the purchase and the recording device. Detective Teuton turned on the recording devices for informants J.S. and J.N. Detective Scott turned on the recording device for A.B. while he was driving her to Tucker's house.

[4] After each of the controlled buys, the informant met Detective Teuton at a pre-arranged location. In A.B.'s case, because Detective Scott drove her to Tucker's home, the methamphetamine and the recording device were already turned over to Detective Scott. Detective Scott turned off A.B.'s recording device and gave both the methamphetamine and the device to Detective Teuton

when he and A.B. arrived at the location. J.S. and J.N. returned the methamphetamine and the still-running recording devices directly to Detective Teuton. Detective Teuton turned off J.S.'s and J.N.'s recording devices. He took the drugs and devices back to the Bloomington Police Department where he logged the methamphetamine into evidence. Detective Teuton downloaded the video from each recording device and transferred it to a DVD, which he reviewed to be sure that it was continuous, and that there were no indications the device had either malfunctioned or been turned off and on again while in the informant's possession. Detective Teuton logged the DVD into evidence by placing his case number, name, and item number on the back of it. An evidence technician placed the evidence sticker on the DVD as well. Before trial, Detective Teuton verified that the video on the DVD was the same video he reviewed when it was initially downloaded.

[5] On June 11, after the last controlled buy, Detective Teuton obtained a search warrant for Tucker's home and for the vehicles on his property. A group of officers went to Tucker's home, but he was not there. Detective Teuton saw Tucker arrive in a small, red pickup truck, and then immediately leave in a silver minivan. Tucker returned between twenty and thirty minutes later in a large, blue pickup truck. He was arrested when he got out of the blue truck and officers began searching his house. The officers recovered two glass smoking pipes, plastic baggies, and a scale from the house.

[6] Officers found the silver minivan a few hundred yards east of Tucker's property, unoccupied and pulled halfway off the road. Detective Teuton obtained a

search warrant for the minivan and he took the keys to the minivan from Tucker. Inside the van, under the driver's seat, officers found a black pouch containing smaller bags that held methamphetamine. They also found a black pouch with Tucker's name on it, papers that belonged to Tucker, and a checkbook with Tucker's name on it.

[7] The State initially charged Tucker with five counts: (I) Class B felony dealing in methamphetamine for the April 24, 2014 sale to A.B.; (II) Class A felony dealing in methamphetamine for the May 27 sale to J.S.; (III) Class B felony dealing in methamphetamine for the June 10 sale to J.N.; (IV) Class A misdemeanor possession of paraphernalia; and (V) Class D felony maintaining a common nuisance. The State later added two counts: (VI) Class A felony dealing in methamphetamine based on the methamphetamine found in the minivan; and (VII) Class D felony possession of marijuana.

[8] Detectives Teuton and Scott testified at trial, describing the procedure used to obtain video of the controlled buys. However, none of the three informants testified as none of them could be located and all three were wanted on unrelated warrants. The three videos were admitted into evidence and shown to the jury over Tucker's objection. The jury returned a verdict of guilty on Counts I through VI. Count VII was dismissed with prejudice on the motion of the State. Tucker now appeals.

# Discussion and Decision

Tucker argues that the trial court abused its discretion when it admitted the recordings of the three controlled buys. He claims that the foundation for the recordings was inadequate under the silent witness theory and that admitting the recordings without the opportunity to cross-examine the three informants violated his rights under the Sixth Amendment Confrontation Clause.

We review the trial court's ruling on the admission of evidence for an abuse of discretion. *Vaughn v. State*, 13 N.E.3d 873, 879 (Ind. Ct. App. 2014), *trans. denied*. We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Id.* Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. *Id.*

## I. Silent Witness Foundation

The silent witness theory permits the admission of photographs as substantive evidence. *Bergner v. State*, 397 N.E.2d 1012, 1017 (Ind. Ct. App. 1979). The theory includes the admission of video recordings, provided there is a strong showing of authenticity and competency. *McHenry v. State*, 820 N.E.2d 124, 128 (Ind. 2005). The sufficiency of the foundation is left to the discretion of the trial court. *Bergner*, 397 N.E.2d at 1017. In general, there must be a showing that the videotape has not been altered. *Mays v. State*, 907 N.E.2d 128, 132 (Ind. Ct. App. 2009), *trans. denied*. In cases involving automatic cameras, "there should be evidence as to how and when the camera was loaded, how frequently

the camera was activated, when the photographs were taken, and the processing and chain of custody of the film after its removal from the camera." *Id.* (quoting *Kindred v. State*, 524 N.E.2d 279, 298 (Ind. 1988)). There is not, however, a requirement that the informant in the video testify that the video accurately represents what occurred. *Id.* at 131.

[12] Here, Detective Teuton testified regarding the nature of the recording devices used and how the devices were prepared for recording. The informants were not told how to turn the recording devices on or off; rather, a detective turned on the device before handing it to the informant and turned off the device when the informant returned with it. Moreover, Detective Teuton testified that "you can always tell if the recording has been turned off or if it's been turned off and turned back on." Tr. p. 197. The recordings were continuous; there were no "black screens" indicating tampering or malfunction of the recording device. Detective Teuton explained the chain of custody after the videos were recorded. He took the recording devices to his office, downloaded the videos, transferred them onto DVDs, and logged the DVDs into evidence. He viewed the video at the time he made the DVD and reviewed it shortly before trial to verify that it had not been altered in any way. Detective Teuton's testimony supports the trial court's inference that the video was not altered either while it was recorded or in the subsequent handling.

[13] Tucker contends that the failure of the three informants to testify precludes sufficient authentication under the silent witness theory because there was no one to testify as to how they actually operated the recording devices and

"whether they turned them off at any point during the transactions they recorded." Appellant's Br. p. 7. He further argues that the informants did not testify that Tucker is the man selling them methamphetamine in the videos, which Tucker claims is an important factor in authenticating the recording. We find these arguments unpersuasive. The burden of proof for authenticity and competency is relative certainty. *See Kindred*, 524 N.E.2d at 298-99 (quoting *Bergner*, 397 N.E.2d at 1017). The trial court could reasonably conclude from Detective Teuton's testimony that any break in recording would have been apparent in the video. As to the identity of the person selling the drugs to the informants in the recordings, Detective Teuton testified that he watched the three recordings and that they were the recordings of the informants purchasing methamphetamine from Tucker. In this case, Detective Teuton's testimony was sufficient to meet the authentication requirements.[1]

[14] In summary, the trial court's determination that the State laid a proper foundation for the admission of the video evidence was not clearly against the logic and effect of the facts and circumstances. *See Vaughn*, 13 N.E.3d at 879. We conclude that the trial court did not abuse its discretion in admitting the video evidence of the three controlled buys.

---

[1] Tucker cites *Bergner*, *Mays*, and *Wise v. State*, 26 N.E.3d 137 (Ind. Ct. App. 2015), *trans. denied*, in support of his argument that identification is an important factor in authentication. We agree. While identity of the parties in the video is a factor, we do not see a requirement that identity be established by a particular witness or class of witnesses.

# II. Confrontation Clause

Tucker's second argument is that showing the recordings of the three controlled buys, in the absence of the informants who carried the recording devices, violated his Sixth Amendment right to confront the witnesses against him. Tucker contends that because "he could not cross-examine the videos, they were not admissible." Appellant's Br. p. 9.

The Sixth Amendment provides that "the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" The Confrontation Clause prohibits the admission of "testimonial hearsay" where the defendant will not have the opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). However, it "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.* at 59 n.9.[2] "Thus, if a statement is either nontestimonial or non-hearsay, the federal Confrontation Clause will not bar its admissibility at trial." *Williams v. State*, 930 N.E.2d 602, 607-08 (Ind. Ct. App. 2010), *trans. denied*.

Here, the statements in the videos are not hearsay. First, Tucker's statements, as the defendant, are not hearsay because they are statements of a party opponent. *See* Ind. Evidence Rule 801(d)(2)(A). The informants' statements

---

[2] The videos in this case are distinguishable on this point from *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), where the evidence at issue was three sworn statements by lab technicians which delivered the results of laboratory testing and which were offered to prove that the substance taken from the defendant was cocaine. Because the lab reports were admitted to prove the truth of the statements in the lab reports, they were hearsay.

are, also, not hearsay as their contributions to the video conversation were not admitted for the truth of the matters asserted. *See* Evid. R. 801(c). Rather, they were properly admitted to place Tucker's statements in context. "Statements providing context for other admissible statements are not hearsay because they are not offered for their truth." *Williams*, 930 N.E.2d at 609 (quoting *United States v. Tolliver*, 454 F.3d 660, 666 (7th Cir. 2006)). Because the statements contained in the videos are not hearsay, the Confrontation Clause does not bar their admission. *See Williams*, 930 N.E.2d at 607-08.

[18] Finding the foundation for the videos adequate under the silent witness theory and that the videos did not violate Tucker's rights under the Confrontation Clause, we affirm.

Bailey, J., and Crone, J., concur.