# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**WILLIAM VAN DER POL, JR.**
Martinsville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

FILED

Jun 06 2013, 9:14 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SCOTT SPEERS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 55A01-1208-CR-391 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MORGAN SUPERIOR COURT
The Honorable Christopher L. Burnham, Judge
Cause No. 55D02-1202-FC-290

**June 6, 2013**

**OPINION - FOR PUBLICATION**

**FRIEDLANDER, Judge**

Scott Speers appeals his conviction for Burglary,[1] as a class C felony, and Theft,[2] as a class D felony. He presents the following restated issues on appeal:

1.  Was Speers entitled to discharge under Indiana Criminal Rule 4(C)?

2.  Did the trial court err in admitting DNA evidence in violation of the Confrontation Clause of the Sixth Amendment of the United States Constitution?

3.  Did an evidentiary harpoon occur during the State's direct examination of the lead detective?

We affirm.[3]

After hours on October 25, 2010, Scroggins Gun Shop in Martinsville was burglarized. The burglar forced open the front door of the business, broke a glass display case, and took eight guns. The crime took less than a minute, and surveillance video did not capture the face or other identifying characteristics of the perpetrator.

Officers from the Martinsville Police Department promptly responded to the scene. Officer Jim Barley, an evidence technician, processed the scene, discovering what appeared to be blood spots the size of an eraser head on two pieces of broken glass from the display case. Officer Barley placed each piece of glass into a separate box and sealed the boxes with evidence tape and his initials. He later took this evidence to the Indiana State Police Lab for testing.

---

[1] Ind. Code Ann. § 35-43-2-1 (West, Westlaw current through P.L. 171 with effective dates through May 7, 2013).

[2] I.C. § 35-43-4-2 (West, Westlaw current through P.L. 171 with effective dates through May 7, 2013).

[3] We held oral argument in this matter at Martin University as part of the university's annual Law Day observance on April 26, 2013. We thank Martin University and its staff and students for their professionalism and hospitality, and we commend both advocates for their skilled presentations.

Shortly after the crime, police had a suspect, Kevin Faucett, who had been found in the area with cuts on his arms and a makeshift bandage. Police questioned Faucett and swabbed his cheek for DNA. This sample was submitted to the lab for DNA comparison with the substance found at the crime scene. At some point prior to DNA testing, Nicole Stickle, a laboratory technician at the State Police Lab, transferred the suspected blood from the pieces of glass to white cloths. Thereafter, Indiana State Police forensic DNA analyst Lori James processed the substance obtained from the glass for DNA and the suspect's DNA. There was no DNA match, and Faucett was excluded as a suspect.

Shortly thereafter, Scott Speers was identified as a suspect based on a CODIS database search. Police then obtained a search warrant to swab Speers's cheek for DNA, and this sample was submitted for DNA analysis. Analyst James determined that Speers's DNA matched the DNA obtained from the pieces of glass.

On February 22, 2011, the State charged Speers with class C felony burglary and class D felony theft. Police arrested him for these charges on March 11, 2011. Following a number of delays, Speers's jury trial commenced on July 17, 2011. The jury found him guilty as charged, and the trial court later sentenced him to eight years for the class C felony and a concurrent three years for the class D felony. Speers now appeals. Additional facts will be presented below as needed.

1.

Speers argues that he was entitled to discharge because he was not brought to trial within the one-year limit set out in Crim. R. 4(C). Our Supreme Court has summarized Crim.

3

R. 4(C) as providing that "a defendant may not be held to answer a criminal charge for greater than one year unless the delay is caused by the defendant, emergency, or court congestion." *Curtis v. State*, 948 N.E.2d 1143, 1148 (Ind. 2011). Our review of a trial court's ruling on a Crim. R. 4(C) motion is for abuse of discretion. *Curtis v. State*, 948 N.E.2d 1143.

Speers was arrested on the instant charges on March 11, 2011, which started the running of the one-year clock. At the initial hearing on May 9, the trial date was set for August 24, 2011. On August 8, the date of the final pretrial hearing, Speers filed a motion to continue the scheduled jury trial. In his motion, Speers indicated that the continuance was sought "because counsel will be out of town from August 20, 2011 through September 6, 2011." *Appendix* at 221. At the pretrial hearing, the trial court granted Speers's requested continuance, noting that Speers was due to be released from prison on an unrelated matter on September 3 and then defense counsel could "better prepare." *Id*. at 10. The court reset the trial for October 26, 2011.

At the final pretrial hearing on October 3, Speers indicated his intent to plead guilty to the burglary charge. As a result, the court ordered a "preplea investigation" and scheduled a guilty plea/sentencing hearing for December 5. *Id*. at 11. Due to an arrest in another county earlier that morning, Speers failed to appear in person at the scheduled hearing on December 5. The court, at defense counsel's request, reset the guilty plea hearing for December 22. At this same time, bond was revoked and a warrant was issued for Speers's arrest.

After arriving late for the December 22 hearing, Speers initially did not want to enter

4

an open plea. When the State stated that it was prepared to file a habitual offender allegation, Speers asked to continue with the guilty plea. The court directed Speers to discuss the matter with defense counsel off the record. Upon leaving the courtroom to consult with counsel, Speers fled. The court indicated that the case would be reset upon Speers's capture.

Speers was arrested on December 26, and the court reset the matter for another final pretrial hearing on January 30, 2012. On January 19, defense counsel moved to withdraw due to a conflict with the new escape case, for which counsel was a witness. The court granted the motion the following day and then appointed Speers's current counsel. At defense counsel's urging, the trial court recused on February 13, due to a similar conflict with the escape case. The cause was subsequently reassigned on February 23 from Morgan Superior Court 3 to Morgan Superior Court 2.

The new court set the cause for pretrial hearing on March 1, 2012. Thereafter, the court set a trial date of June 5, 2012. At the final pretrial hearing on May 21, the State made an oral motion for continuance. Speers objected to the continuance based upon Crim. R. 4(C). The court took the matter under advisement and issued an order on May 29, 2012, concluding that the Crim. R. 4 deadline was July 28, 2012. Accordingly, the court granted the State's request for a continuance and rescheduled the trial for July 17, 2012. The jury trial was held on July 17-18, 2012, at which Speers sought discharge based upon Crim. R. 4(C).

Some 478 days elapsed between Speers's arrest and trial. Working backward, therefore, at least 113 days of delay must be attributable to Speers in order to uphold the trial

court's denial of the motion for discharge. At oral argument, Speers conceded that he was responsible for the delays caused by his indication that he was going to plead guilty and his ensuing escape during the guilty plea hearing. Thus, the 84 days between October 3 and December 26 count against Speers.

Speers narrowed the issue, at oral argument, down to the delay caused by his motion for continuance filed on August 8 at the final pretrial hearing before the scheduled August 24, 2011 trial date. Speers's appellate counsel argued that the State agreed to the continuance, which was sought as a matter of expediency because Speers was to be released from the Department of Correction in an unrelated cause shortly after the scheduled trial date. Regardless, the record indicates that Speers requested the continuance, which resulted in the trial date being reset for October 26, 2011. This delay is attributable to Speers. *See Cole v. State*, 780 N.E.2d 394 (Ind. Ct. App. 2002) (observing that it does not matter why the defendant sought the continuance), *trans. denied*. This delay easily gets the State the rest of the way over the 113-day hurdle.[4] Accordingly, we conclude that the trial court properly denied the motion for discharge.

2.

Speers contends that the trial court erroneously admitted results of DNA testing in violation of the Confrontation Clause of the Sixth Amendment of the United States Constitution. Despite the fact that the DNA analyst (Lori James) testified at trial regarding

---

[4] The State argues that Speers caused additional delay as a result of his escape because it necessitated defense counsel's withdrawal from the case and the recusal of the original trial court. We find this argument persuasive, but we need not address it because the delays we have already attributed to Speers establish there was no Crim. R. 4(C) violation.

6

the DNA analysis and results, Speers contends that his confrontation rights were violated because the lab technician (Nichole Stickle), who transferred the suspected blood from the glass to white cloths for testing by James, did not testify. He claims that Stickle's transfer of the blood to the swabs amounted to a crucial step in the process and that, therefore, Stickle was an important witness that was required to be called. Without Stickle's testimony, Speers argues "there is no assurance that the sample tested and allegedly matched to the defendant was in fact even relevant to the instant case." *Appellant's Brief* at 14. In other words, according to Speers, there was "no evidence tying the sample to the crime scene". *Id.*

The Sixth Amendment, made applicable to the states through the Fourteenth Amendment, states in relevant part: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. "A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." *Pendergrass v. State*, 913 N.E.2d 703, 705 (Ind. 2009) (citing *Crawford v. Washington,* 541 U.S. 36, (2004)). The Confrontation Clause applies, however, only to testimonial statements, that is, "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford v. Washington,* 541 U.S. at 51 (quoting 2 N. Webster, *An American Dictionary of the English Language* (1828)).

In *Pendergrass v. State*, our Supreme Court held that a Certificate of Analysis regarding DNA evidence was testimonial evidence, requiring the opportunity for cross-examination of a witness. The Court further held that the defendant's confrontation rights

7

were satisfied by the testimony of the laboratory supervisor, who had a "direct part in the process by personally checking [the laboratory processor's] test results." *Pendergrass v. State*, 913 N.E.2d at 708. The Court noted, "she could testify as to the accuracy of the tests as well as standard operating procedure of the laboratory and whether [the processor] diverged from these procedures." *Id*. at 707-08. In response to Pendergrass's argument that the State "did not call the right – or enough – witnesses", the Court indicated that not "everyone who laid hands on the evidence must be called." *Id*. at 708 (quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 n.1 (2009)).[5] The State's decision to call the laboratory supervisor "with direct involvement" in the technical processes "sufficed for Sixth Amendment purposes." *Id*.

*Pendergrass* is directly applicable to the instant case. Here, the DNA analyst who performed – not just supervised – the DNA testing and analysis testified at trial and was subject to cross-examination. As a result of her direct involvement, James was able to testify regarding procedures of the lab, potential tampering, specifics and accuracy of the testing and analysis, and the Certificate of Analysis and other related documents admitted into evidence. Speers's claim that the State should have called the laboratory technician who performed the preliminary step of swabbing the blood from the glass[6] amounts to a chain of custody

---

[5] In *Melendez-Diaz*, a majority of the United States Supreme Court indicated that it was not the case that "anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." *Melendez-Diaz v. Massachusetts*, 557 U.S. at 311 n.1.

[6] There is no indication that the technician's role in the DNA testing involved a material exercise of judgment or analysis. On the contrary, it is evident that this preliminary stage required the technician to perform a largely mechanical task. "[A]bsent some reason to believe there was error or falsification, the need to call such

argument and does not rise to the level of a confrontation issue. Analyst James had direct involvement in the testing and analysis of the DNA at issue, and her testimony regarding the DNA evidence sufficed for Sixth Amendment purposes. *See Pendergrass v. State*, 913 N.E.2d 703.

Understanding the clear implications of *Pendergrass*, Speers argues that the case is no longer good law in light of United States Supreme Court's plurality opinion in *Williams v. Illinois*, 132 S.Ct. 2221 (2012). We cannot agree. Speers's argument in this regard is fundamentally flawed because it is based on the premise that the Court in *Pendergrass* "found that the Confrontation Clause was not implicated." *Appellant's Brief* at 11. On the contrary, the Court found it implicated but satisfied. *See Pendergrass v. State*, 913 N.E.2d at 707 ("we will treat the Certificate of Analysis in the present case as testimonial").[7]

Further, the facts of the instant case and *Williams* are not on par. In *Williams*, vaginal swabs taken from a rape victim were submitted to an independent, private laboratory – Cellmark. In turn, Cellmark produced a report transmitting a DNA profile that its analysts had purportedly developed from the swabs. Using the DNA profile obtained from Cellmark, Sandra Lambatos, a forensic specialist at the Illinois State Police Lab, searched the state's database and found a matching profile, that of Williams. At trial, over Williams's Confrontation Clause objection, Lambatos was permitted to testify that the DNA profile of Williams's blood in the state database matched a male DNA profile Cellmark had created

---

a technician as a witness may not become a constitutional necessity." *United States v. Boyd*, 686 F. Supp. 2d 382, 384 (S.D.N.Y. 2010), *aff'd by summary order*, 401 F. App'x 565 (2d. Cir. 2010), *cert. denied*.

from semen in the victim's vaginal swabs. Although Cellmark's written report was not introduced into evidence, Lambatos was allowed to rely upon it during her expert testimony. No witness having personal knowledge of Cellmark's development of the putative offender's DNA profile testified at trial.

On these facts, five justices concluded that the Confrontation Clause was not violated by Lambatos's testimony because the information in Cellmark's report was not testimonial. Justice Thomas provided the swing vote, disagreeing with the rationale of the lead opinion authored by Justice Alito but concurring in the judgment. In Justice Thomas's view, the Cellmark report was not testimonial because it "lacks the solemnity of an affidavit or deposition, for it is neither a sworn nor a certified declaration of fact." *Williams v. Illinois*, 132 S.Ct. at 2260.

In the case at hand, analyst James's testimony was not based on a certified declaration of fact from another analyst or lab. In fact, no outside lab was involved in this case, and the DNA profile and Certificate of Analysis at issue were produced by James, who testified at trial and was subject to cross-examination. Accordingly, we find *Williams* inapposite and *Pendergrass* controlling.

3.

Finally, Speers contends that during direct examination of the lead detective the State "presented evidence in such a way as to create an evidentiary harpoon." *Appellant's Brief* at

---

[7] Justice Thomas, who provided the swing vote in *Williams*, would have likewise treated the Certificate of Analysis in *Pendergrass* as a testimonial statement. His concurring opinion, however, does not contradict the holding in *Pendergrass* regarding satisfaction of the constitutional demands.

10

19. The following testimony occurred after the detective explained that the initial suspect was excluded based on DNA results:

> [STATE:] Okay. Did there come a point where you developed a second suspect?
>
> [WITNESS:] Yes.
>
> [STATE:] And having developed a suspect, what did you then do[?]

*Transcript* at 314. Speers objected and moved for a mistrial on the basis that the State was leaving the jury to speculate as to how he was developed as a suspect.[8] The State responded that the reason a defendant is developed as a suspect is often kept from the jury and that, here, the State was carefully trying to avoid informing the jury of the CODIS match, which would have indicated Speers had a prior criminal history. The trial court denied the motion for mistrial.

On appeal, Speers claims that the testimony set out above amounted to an evidentiary harpoon. "An evidentiary harpoon is the placing of inadmissible evidence before the jury with the deliberate purpose of prejudicing the jurors against the defendant." *Kirby v. State*, 774 N.E.2d 523, 535 (Ind. Ct. App. 2002), *trans. denied*. To prevail on such a claim, the defendant must show that: (1) the prosecution acted deliberately to prejudice the jury; and (2) the evidence was inadmissible. *Id.* The defendant must show further that he was "placed in

---

[8] Speers directs us to a number of juror questions, submitted but not answered, regarding what led police to develop him as a suspect. During final instructions, the trial court instructed the jury:

> During the trial, the Court may rule that certain questions may not be answered and/or that certain exhibits may not be allowed into evidence. You must not concern yourselves with the reasons for the rulings…. Your verdict should be based only on the evidence admitted and the instructions on the law."

*Transcript* at 353-54.

a position of grave peril to which he should not have been subjected." *Jewell v. State*, 672 N.E.2d 417, 424 (Ind. Ct. App. 1996), *trans. denied*.

We agree with the State that Speers has mischaracterized this situation as an evidentiary harpoon. The brief question and answer set out above did not inject any inadmissible evidence into the trial and was used by the State as a simple transition from testimony regarding the initial suspect to the detective's subsequent investigation of Speers. In fact, it is clear that the State deliberately sought to avoid introducing any evidence regarding the CODIS match. While the jury may have been left to speculate as to how Speers became a suspect, this would have been true regardless of whether the above exchange occurred. Under the circumstances, we find neither the insertion of an evidentiary harpoon nor a situation of grave peril.

Judgment affirmed.

ROBB, C.J., and CRONE, J., concur.