ATTORNEY FOR APPELLANT
William Van Der Pol, Jr.
McCalla, Alabama

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General

Eric Parker Babbs
Deputy Attorney General
Indianapolis, Indiana

_____

# In the
# Indiana Supreme Court



FILED
Dec 19 2013, 9:11 am

CLERK
of the supreme court,
court of appeals and
tax court

_____

No. 55S01-1312-CR-841

SCOTT SPEERS,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

_____

Appeal from the Morgan Superior Court II, No. 55D02-1202-FC-290
The Honorable Christopher L. Burnham, Judge

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 55A01-1208-CR-391

_____

**December 19, 2013**

**Rucker, Justice.**

In this case we examine whether a laboratory technician involved in the chain of custody of DNA evidence must testify at trial in order to satisfy the demands of a defendant's Sixth Amendment right of confrontation. We conclude the Constitution does not so require.

**Facts and Procedural History**

During the evening hours of October 25, 2010 a gun store in downtown Martinsville was burglarized. The store's alarm was activated and the Martinsville police promptly responded to the scene. They found the front door of the store had been forced open, a large glass display case had been broken, and eight guns were missing. The store's surveillance video did not capture the face of the perpetrator. Police found small spots of what appeared to be blood on two pieces of broken glass from the display case. Officer Jim Bradley, the evidence technician, processed the scene. In doing so Officer Bradley placed each piece of glass into separate boxes, sealed the boxes with red evidence tape, and affixed his initials. He then took this evidence to the Indiana State Police Laboratory for testing. Although the record does not reveal the details, at some point Scott Speers was identified as a suspect as a result of a CODIS database search.[1] Thereafter, pursuant to a search warrant, police obtained a cheek swab from Speers and this sample was also submitted to the Indiana State Police Laboratory. A forensic analyst examined the evidence and concluded that Speers' DNA matched the DNA from the pieces of glass.

On February 22, 2011, the State charged Speers with burglary as a class C felony and theft as a class D felony. After a jury trial that began on July 17, 2012, Speers was convicted as charged. Thereafter the trial court sentenced Speers to eight years for burglary and three years for theft, and ordered the sentences to run concurrently for a total executed term of eight years.

Speers appealed raising the following restated claims: (1) the trial court erred in denying his Indiana Criminal Rule 4(C) motion for discharge, (2) the trial court erred in denying his motion for mistrial, and (3) the trial court erred by admitting DNA evidence in violation of his

---

[1] An acronym for Combined DNA Index System "CODIS" is "a computer software program that operates national databases of DNA profiles from convicted offenders and unsolved crime scene evidence." Anderson v. State, 961 N.E.2d 19, 24 (Ind. Ct. App. 2012).

Sixth Amendment right of confrontation. The Court of Appeals rejected all three claims and affirmed the judgment of the trial court. See Speers v. State, 988 N.E.2d 1238 (Ind. Ct. App. 2013). Speers seeks transfer which we now grant to address his Sixth Amendment argument. In all other respects we summarily affirm the opinion of Court of Appeals. See Ind. Appellate Rule 58(A). And although we also affirm the judgment of the trial court, we do so on grounds slightly different from those of our colleagues. Additional relevant facts are set forth below.

## Standard of Review

Generally, "[a] trial court has broad discretion in ruling on the admissibility of evidence and we will disturb its rulings only where it is shown that the court abused that discretion." Turner v. State, 953 N.E.2d 1039, 1045 (Ind. 2011). But where, as here, a constitutional violation is alleged, the proper standard of appellate review is de novo. See Jones v. State, 982 N.E.2d 417, 421-22 (Ind. Ct. App. 2013), trans. denied (citing United States v. Aguila–Urbay, 480 Fed. Appx. 564, 566 (11th Cir. 2012) ("We review evidentiary rulings for an abuse of discretion. . . . However, we review de novo the question of whether hearsay statements are testimonial for purposes of the Confrontation Clause." (internal quotation omitted)); see also United States v. Nettles, 476 F.3d 508, 517 (7th Cir. 2007) ("We review de novo a district court ruling that affects a defendant's Sixth Amendment rights." (citation omitted)).

## Discussion

The Confrontation Clause of the Sixth Amendment provides in relevant part "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "[T]his bedrock procedural guarantee applies to both federal and state prosecutions." Crawford v. Washington, 541 U.S. 36, 42 (2004). The Confrontation Clause applies to an out-of-court statement if it is testimonial in nature, the declarant is not unavailable, and the defendant has had no opportunity to cross-examine the declarant. See id. at 59.

Characterizing as a "crucial step" the transferring of blood from a piece of glass to a swab for testing, Speers contends his right of confrontation was violated because the technician who performed this function "never testified nor was subject to cross examination." Br. of Appellant at 8. The facts are these. As indicated earlier a Martinsville police evidence technician observed what appeared to be small drops of blood on two pieces of broken glass present at the crime scene. The officer placed each piece of glass into a separate box, sealed the boxes with red evidence tape, and affixed his initials. He later took this evidence to the Indiana State Police Laboratory for testing. A laboratory technician—Nichole Stickle—transferred the purported blood drops from the glass and swabbed them onto a white cloth for testing. Stickle did not testify at trial; however, she "[did]n't do any testing." Tr. at 194. Instead Lori James—a forensic DNA analyst for the Indiana State Police Laboratory—conducted the analysis of the swabs taken from the piece of glass. Among other things she testified: "As a DNA analyst I receive items of evidence that contain potential sources of DNA. And I examine those items of evidence to develop a unique profile from them, so that I may be able to either include or exclude a person as being a possible contributor to that sample." Tr. at 170. Over Speers' objection the State introduced three exhibits into evidence, all of which James prepared after conducting her analysis: Exhibit 7—STR Summary Sheet identifying two "swab[s] of glass"; Exhibit 9—Certificate of Analysis noting the "DNA profile obtained from the swabs of the glass . . . is consistent with an unknown male . . . ."; and Exhibit 10—Certificate of Analysis noting the "DNA profiles obtained from the swabs of glass . . . match the DNA profile of Scott Speers . . . ." Vol. of Exhibits (State's Ex. 7, 9, 10). After comparing a known sample of Speers' DNA (obtained through a cheek swab pursuant to a search warrant) to the swabs taken from the glass found at the crime scene, James concluded: "In the absence of an identical twin, Scott Speers is the source of the DNA to a reasonable degree of scientific certainty. . . . and the statistic for this particular sample is 1 in 3.4 quintillion." Tr. at 214.

Speers insists his right of confrontation was violated because the State failed to present Stickle for cross examination. And he grounds his argument in two of the four separate opinions written by justices of the United States Supreme Court in Williams v. Illinois, 132 S. Ct. 2221 (2012). Williams involved a comparison of two DNA profiles, one of semen recovered from a rape victim and one residing in the state's forensic database. A male DNA profile was

4

developed by Cellmark, an accredited outside laboratory, from swabs taken from the victim's rape kit. Williams, 132 S. Ct. at 2230. The database profile was developed by a state police laboratory analyst from a sample taken from the defendant pursuant to his arrest in 2000 on unrelated charges. At trial, the State presented the analyst who performed the testing of the defendant's sample. She testified as to the process she used to develop the DNA profile, and she stated that she had entered the profile into the state's forensic database. Id. at 2229. The State then presented an expert witness who testified as to the chain of custody of the vaginal swab sample. Specifically, this witness confirmed that records of the state police lab reflected that the lab had sent the vaginal swabs to Cellmark and that Cellmark had returned them along with a deduced male DNA profile. Id. at 2230. The witness then testified that she found a match between the Cellmark DNA profile derived from the vaginal swabs and the defendant's DNA profile. Id. But Cellmark's report on the vaginal swab profile was not admitted into evidence, no Cellmark analyst testified at trial, and the state's expert did not testify that she had conducted or observed the testing on the vaginal swabs. Id. Five justices on the Williams Court determined that the state's expert's testimony was not an adequate substitute for testimony from the Cellmark analyst who performed the testing on the vaginal swabs.[2] See Williams, 132 S. Ct. at 2268 (Kagan, J., dissenting).

Unlike Williams, here both DNA profiles were analyzed by a single analyst—state police lab analyst Lori James. James completed and signed the Certificate of Analysis matching the DNA obtained from the glass swabs to the DNA obtained from Scott Speers. And James testified at trial as to her process in testing and analyzing all these samples, and as to her conclusion in making the match. Tr. at 203-06, 212-14. James testified that she did not actually prepare the glass swabs but that another technician had transferred the blood from the pieces of glass to the swabs that James eventually tested. We agree with the Court of Appeals that Williams—in which the testimony of the analyst who performed the DNA testing on the crime scene sample was entirely absent—provides little guidance in evaluating the facts before us. See Speers, 988 N.E.2d at 1244 (finding Williams "inapposite").

---

[2] In a splintered set of opinions, five justices on the Williams Court ultimately determined that the testifying expert's reliance on Cellmark's report to make a DNA match to the defendant did not constitute testimonial evidence and thus was not subject to the guarantees of the Confrontation Clause. But only a plurality agreed as to the rationale.

However, in rejecting Speers' Confrontation Clause argument the Court of Appeals relied on this Court's opinion in Pendergrass v. State, 913 N.E.2d 703 (Ind. 2009). Although we do not agree with Speers' assertion that Williams abrogated Pendergrass, we do conclude the continued validity of Pendergrass has been undermined by subsequent authority from the United States Supreme Court. But as we explore below the subsequent authority confirms that Speers' right of confrontation was not violated.

In Pendergrass a majority of this Court determined that the defendant's cross examination of a laboratory supervisor, who had performed a "technical review" of the DNA tests at issue, satisfied the Confrontation Clause even though she had not performed the actual DNA testing or analysis and the analyst who performed the test did not testify at trial. Pendergrass, 913 N.E.2d at 704, 708. The Court held that the State's decision to call the laboratory supervisor "with direct involvement" in the technical process "sufficed for Sixth Amendment purposes." Id. at 708.

Shortly after our Pendergrass decision, the United States Supreme Court decided Bullcoming v. New Mexico, 131 S. Ct. 2705 (2011). That case involved a driving while intoxicated conviction which was based in part on a forensic laboratory report certifying the defendant's blood alcohol concentration. Similar to the facts in Pendergrass, the analyst who performed the testing and signed the certification did not testify at trial. Instead, the state called another analyst who, like the supervisor in Pendergrass, was familiar with the laboratory testing procedures, but had neither participated in nor observed the test on the defendant's blood sample. In deciding the case the Court declared:

> The question presented is whether the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification. We hold that surrogate testimony of that order does not meet the constitutional requirement. *The accused's right is to be confronted with the analyst who made the certification,* unless that analyst is unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine that particular scientist.

6

Id. at 2710 (emphasis added). Thus <u>Bullcoming</u> makes clear that it does not "suffice[ ] for Sixth Amendment purposes" that the State may merely call as a witness a laboratory supervisor "with direct involvement" in the technical process. <u>Pendergrass</u>, 913 N.E.2d at 708. Instead "surrogate testimony of that order does not meet the constitutional requirement. The accused's right is to be confronted with the analyst who made the certification." <u>Bullcoming</u>, 131 S. Ct. at 2710.

Hence although <u>Pendergrass</u> provides the State no refuge, Speers nonetheless cannot prevail on his Sixth Amendment claim. In this case the sole analyst who conducted the DNA testing and prepared the laboratory reports that were introduced as exhibits did in fact testify at trial. This is precisely the procedure dictated by <u>Bullcoming</u>. By contrast, the witness about whom Speers complains was merely the technician who removed the sample for later testing and analysis—just one person involved in the chain of custody of the evidence. The question is whether the State was required to present this witness as well in order to honor Speers' constitutional right of confrontation. This point seems to have been put to rest in <u>Melendez-Diaz v. Massachusetts</u>, 557 U.S. 305 (2009). In that case the defendant was convicted for drug offenses based partly on certificates of analysis stating the substance found in seized bags was cocaine of a certain weight, admitted without any live testimony either by the analyst who signed the affidavits or by anyone else. The State's position was that the affidavits stood on their own, and thus no witnesses were called. <u>See</u> <u>Melendez-Diaz</u>, 557 U.S. at 308-09. After concluding that the certificates were "quite plainly affidavits," the Supreme Court held that the affidavits clearly constituted testimonial evidence because they "are functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination,'" thus the analysts swearing their accuracy were "witnesses" for Sixth Amendment purposes. <u>Id.</u> at 310-11 (quoting <u>Davis v. Washington</u>, 547 U.S. 813, 830 (2006)). And "[a]bsent a showing that the analysts were unavailable to testify at trial and that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to 'be confronted with' the analysts at trial." <u>Id.</u> at 311 (quoting <u>Crawford</u>, 541 U.S. at 54) (emphasis omitted). Responding to the dissent's concerns about the consequences of its holding, the <u>Melendez-Diaz</u> majority declared:

7

> Contrary to the dissent's suggestion . . . we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case. While the dissent is correct that "[i]t is the obligation of the prosecution to establish the chain of custody" . . . this does not mean that everyone who laid hands on the evidence must be called.

Melendez-Diaz, 557 U.S. at 311 n.1 (quoting id. at 335). See also Bullcoming, 131 S. Ct. at 2712 n.2 ("It is up to the prosecution . . . to decide what steps in the chain of custody are so crucial as to require evidence . . . .") (quoting Melendez-Diaz, 557 U.S. at 311 n.1).

Essentially, there is no Confrontation Clause violation where the State introduces evidence and links in the chain of custody of that evidence are missing. Indeed, "the State need not establish a perfect chain of custody, and any gaps go to the weight of the evidence and not its admissibility." Kennedy v. State, 578 N.E.2d 633, 639 (Ind. 1991). In this case Speers pointed out during cross-examination of James that she was "not the person who took the purported blood off the glass," "that witness is not going to be testifying here today," and "if that person screwed it up, no matter what you did after the fact, all you would get would be an erroneous result." See Tr. at 220, 21. The significance of any gap created by the absence of Stickle's testimony was a matter for the jury to weigh. The trial court did not err by admitting the DNA evidence over Speers' Confrontation Clause objection.

**Conclusion**

We affirm the judgment of the trial court.

Dickson, C.J., and David, Massa and Rush, JJ., concur.

8