## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 29 2017, 8:56 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew D. Anglemeyer
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ali B. McGraw,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 29, 2017

Court of Appeals Case No.
49A05-1611-CR-2515

Appeal from the Marion Superior Court

The Honorable Christina Klineman, Judge

Trial Court Cause No.
49G17-1607-F6-28836

**Brown, Judge.**

[1] Ali B. McGraw[1] appeals his conviction for torturing or mutilating a vertebrate animal as a level 6 felony. McGraw raises one issue which we revise and restate as whether the trial court erred in admitting the testimony of a veterinarian. We affirm.

*Facts and Procedural History*

[2] Sometime after 5:30 p.m. on July 25, 2016, N.G., who was eleven years old and had spent the summer with her grandmother, was dropped off, together with her dog Diamond, at the house of her aunt Tassawa Martin in Indianapolis to wait for her mother to pick her up the following morning after she was off work. Diamond, a female pitbull puppy, was about four months old and weighed about twenty-five pounds. McGraw, Martin's boyfriend, Martin's son, and their dog Titan lived in the house.[2]

[3] At the time N.G. arrived at the house, McGraw was on his way to work, and he typically worked from 6:30 p.m. to 5:00 a.m. At about 12:10 a.m., McGraw called Martin and asked her to pick him up because he was off work early. At that time, N.G. was asleep on the couch and Diamond was in a cage in the utility room. Martin drove to pick up McGraw, and when McGraw entered Martin's vehicle she noticed that it smelled like McGraw had been drinking and

---

[1] At the start of trial, the trial court stated "we're on the record in . . . Sidney Spruill aka Ali McGraw for the purpose of this jury trial we're going to use Sidney Spruill . . . ." Transcript Volume 2 at 4. McGraw was also referred to as Kamine at trial.

[2] Martin testified that Titan is an American Staffordshire Terrier and is about ninety pounds.

that he was irritated. Martin asked McGraw why he was off work so early, and he said "[s]crew that job." Transcript Volume II at 123.

[4] Upon arriving at the house, McGraw saw Diamond in her cage, pointed at Diamond, and in an angry voice said "what is this." *Id.* at 141. He also stated he "lives here too and he has say and the dog's not supposed to be here." *Id.* at 110. Martin told McGraw that N.G. was there and that Diamond was N.G.'s dog and would be picked up. McGraw picked up the cage with Diamond inside it and moved toward an outside door, and Martin told McGraw that he had been drinking and needed to lie down. Diamond was "getting shook around in the cage because she's small," and Martin attempted to prevent McGraw from exiting the house. *Id.* at 111. McGraw exited the house with the cage, walked down the driveway, and "slammed her in the middle of the street. In the cage." *Id.* at 114. N.G. watched McGraw throw the cage in the street from the living room window, and then she ran into the bathroom and called her mother and the police. N.G. told her mother that McGraw "killed the dog." *Id.* at 195.

[5] McGraw returned to the house, and Martin went to check on Diamond. Because the cage was bent or broken and its door latch was inoperative, Martin pulled off the back part of the cage in order to remove Diamond. Martin brought Diamond back into the house and then let both Diamond and Titan into the backyard. McGraw said "the dog had to go," went out the back door, picked up Diamond, lifted Diamond over his head, and then "slammed her over the top" of a fence, which was six or seven feet high, onto an asphalt

driveway. Transcript at 116, 118. Martin heard Diamond cry and "thought she was gone," and Diamond "scooted up" under Martin's vehicle and was whining and whimpering. *Id.* at 118. The police arrived, and one of the officers observed that McGraw was sweating heavily, that Diamond was under a vehicle, and that part of a dog cage was in the street, and another officer observed that Diamond "looked hurt" and was whining. *Id.* at 165. The vehicle was gradually moved until Diamond could be removed from beneath it.

[6] Jacqueline Nowinski, who worked for Indianapolis Animal Care Services, responded to the scene where she found Diamond on the grass near the driveway, and observed that Diamond "wasn't trying to get up, it was just laying there, so [she] could tell it was injured." *Id.* at 209. Nowinski transported Diamond to the Airport Animal Emergency Center ("AAEC") where the dog was treated by Dr. Gal[3] and x-rays were performed which showed that Diamond had two fresh fractures of the right humerus.

[7] The State charged McGraw with domestic battery and torturing or mutilating a vertebrate animal as level 6 felonies and domestic battery and interference with the reporting of a crime as class A misdemeanors.[4] At McGraw's jury trial, the

---

[3] Dr. Gal did not testify at trial and was living in Hungary.

[4] Ind. Code § 35-46-3-12(c) provides: "A person who knowingly or intentionally tortures or mutilates a vertebrate animal commits torturing or mutilating a vertebrate animal, a Level 6 felony." Ind. Code § 35-46-3-0.5 provides that "'[m]utilate' means to wound, injure, maim, or disfigure an animal by irreparably damaging the animal's body parts or to render any part of the animal's body useless" and that "[t]he term includes bodily injury involving: (A) serious permanent disfigurement; (B) serious temporary disfigurement; (C) permanent or protracted loss or impairment of the function of a bodily part or organ; or (D) a fracture." The statute also provides that "'[t]orture' means: (A) to inflict extreme physical pain or injury on an animal

court admitted into evidence x-rays taken and a medical report prepared at AAEC, and the jury heard the testimony of Martin, N.G., N.G.'s mother, police officers who responded to the scene, Officer Nowinski, and Dr. Jon Sheff, a veterinarian and the Hospital Director and President of the Board of Directors at AAEC. The jury found McGraw guilty of torturing or mutilating a vertebrate animal as a level 6 felony and not guilty on the other charges. The court sentenced McGraw to 270 days in Marion County Community Corrections work release and, in its sentencing order, stated that McGraw "may receive AMS upon successful completion of MCCC." Appellant's Appendix Volume II at 14.

## *Discussion*

[8] The issue is whether the trial court erred in admitting the testimony of Dr. Sheff. We generally review the trial court's ruling on the admission of evidence for an abuse of discretion. *Brittain v. State*, 68 N.E.3d 611, 616-617 (Ind. Ct. App. 2017), *trans. denied*. However, constitutional claims are reviewed *de novo*. *See id.* A failure to timely object to the erroneous admission of evidence at trial will procedurally foreclose the raising of such error on appeal unless the admission constitutes fundamental error. *Stephenson v. State*, 29 N.E.3d 111, 118 (Ind. 2015). Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue and is error that makes a fair trial

---

with the intent of increasing or prolonging the animal's pain; or (B) to administer poison to a domestic animal . . . ." The State also initially charged McGraw with identity deception, but that count was later dismissed.

impossible or constitutes clearly blatant violations of basic and elementary principles of due process presenting an undeniable and substantial potential for harm. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006).

[9] McGraw contends that the only evidence Diamond suffered injuries sufficient to meet the definition of "mutilate" came from Dr. Sheff's testimony, the State used this testimony to prove Diamond was a vertebrate animal, Dr. Sheff's testimony regarding Diamond's injuries violated his Sixth Amendment right to confrontation, and although he did not object to this testimony, its admission was fundamental error and not harmless beyond a reasonable doubt. The State responds that McGraw does not contend on appeal and never asserted below that the medical report and x-rays were inadmissible. It also argues that the medical report and x-rays were not testimonial, Dr. Sheff's testimony did not violate McGraw's confrontation right as he did not testify about Dr. Gal's opinions or observations but rather testified in his own independent expertise regarding his observations of Diamond's x-rays, and that any error in admission of Dr. Sheff's testimony is harmless.

[10] The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. CONST. amend. VI. The Confrontation Clause applies to an out-of-court statement if it is testimonial in nature, the declarant is not unavailable, and the defendant has had no opportunity to cross-examine the declarant. *Speers v. State*, 999 N.E.2d 850, 852 (Ind. 2013) (citing *Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354 (2004)), *cert. denied*, 134

S. Ct. 2299 (2014). "[T]estimonial statements are those that are substitutes for live testimony, that is 'they do precisely what a witness does on direct testimony . . . .'" *Lehman v. State*, 926 N.E.2d 35, 40 (Ind. Ct. App. 2010) (citing *Davis v. Washington*, 547 U.S. 813, 830, 126 S. Ct. 2266 (2006)), *reh'g denied*, *trans. denied*. Violations of the right to confrontation do not require reversal if the State can show beyond a reasonable doubt that the error did not contribute to the verdict. *Koenig v. State*, 933 N.E.2d 1271, 1273 (Ind. 2010).

[11] To the extent McGraw asserts the admission of the medical report and the x-rays into evidence was error, we observe that the trial court stated that the exhibits were admitted without objection and McGraw does not point to the record to show he argued at trial that the admission of the report and the x-rays violated his right to confrontation. Accordingly, McGraw has waived any argument regarding the admission of the medical report and x-rays into evidence. *See Small v. State*, 736 N.E.2d 742, 747 (Ind. 2000) (holding, where the defendant argued his right to confront witnesses was violated, that the defendant did not object on confrontation grounds at trial and that the claim of error was waived). We further observe that, waiver notwithstanding, the medical report and x-rays prepared by AAEC were created for the purpose of diagnosing and treating Diamond and not for the purpose of proving some fact at trial,[5] the records were not testimonial in nature, and thus the admission of

---

[5] While the medical report, under the heading "Description of Animal (To be completed by ACO)" and in a space for "Type," where the options included "Stray," "Owner Surrender," "Investigation," "Law Enforcement," and "Quarantine," the word "Investigation" was circled, State's Exhibit 25, the report also

the records did not violate McGraw's right to confrontation. *See Richardson v. State*, 856 N.E.2d 1222, 1230 (Ind. Ct. App. 2006) (holding, where the defendant argued that admission of certain medical records violated his right to confrontation, that the medical records were by their nature not testimonial and that the trial court did not abuse its discretion in admitting the records), *trans. denied*; *see also Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324, 129 S. Ct. 2527, 2539-2540 (2009) ("Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial."); *Montgomery v. State*, 22 N.E.3d 768, 775 (Ind. Ct. App. 2014) (holding that the main purpose of certain records was not to establish or prove some fact at trial, citing *Melendez-Diaz*, and concluding that the records were not testimonial and their admission did not violate the defendant's Confrontation Clause rights), *trans. denied*.

[12]  We next turn to the admission of Dr. Sheff's testimony. We note that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed" and "[e]xperts may testify to opinions based on inadmissible evidence, provided that it is of the type reasonably relied upon by experts in the field." Ind. Evidence Rule 703; *see Ackerman v. State*, 51

included a description of Diamond's injuries and health, the treatment provided, and notes regarding follow up care, and Dr. Sheff testified that Diamond's records, which included x-rays, were kept in the ordinary course of business at AAEC and done for every animal through the animal's treatment. **(Tr. II 230-233)**

N.E.3d 171, 189 (Ind. 2016), *cert. denied*, 137 S. Ct. 475 (2016). Dr. Sheff testified regarding the general practice when an animal is admitted to AAEC including how an animal is assessed, diagnostic notes are prepared, and x-rays are performed. Dr. Sheff testified that he did not observe Diamond and that Diamond was treated by Dr. Gal, that to his knowledge Diamond's records were kept in the ordinary course of business at AAEC, which is done for every animal at or near the time the animal is presented and through the animal's treatment, and that x-rays were performed on Diamond and kept as part of her medical record. The medical report in the record, under the headings "Main Problem" and "Results of Examination," states "Fractured right humerus (medial condyle)." State's Exhibit 25. The prosecutor asked Dr. Sheff "what is a humerus," and he replied "[t]he first appendage of the arm." Transcript Volume II at 235. The prosecutor asked "what is a fracture," and Dr. Sheff answered "[a] fracture means broken." *Id*. When asked "what is a medial condial [sic]," Dr. Sheff replied "[i]t's the distal part of the arm." *Id.* When asked "[s]o, was it fractured to two (2) different bones," Dr. Sheff testified: "It's the same bone, but there were fractures in two (2) different parts." *Id.* Dr. Sheff then testified that a dog has vertebrae and that Diamond had vertebrae. When asked to describe the x-ray images, Dr. Sheff explained that one of the images was a lateral view of the thorax and two front limbs and another image was a "VD view of the thorax." *Id.* at 236. The prosecutor asked if Dr. Sheff saw a fracture in the image, and Dr. Sheff offered to point it out. The prosecutor asked Dr. Sheff "[i]f you'd like to approach and point it out to us laypeople," and Dr. Sheff testified: "Sure. So, what they're, what they're pointing to over

here, is there's a fracture line right here. So there's a fracture line right there. And then it's possible to have a compression fracture right over here. See how this angle comes up? It's in that part right there." *Id.* at 237. He further testified "[b]oth of those fractures are . . . on the humerus," and when asked "did those fractures appear to be healing to you at all," he testified "[n]o. Those are fresh." *Id.* at 238.

[13] The record reveals that Dr. Sheff testified, in his own expertise, that dogs have vertebrae and that the x-ray images which were part of Diamond's record at AAEC showed that Diamond had fresh fractures to her humerus. His opinions as to whether there were fractures to Diamond's humerus and whether they had recently occurred were based on Diamond's x-rays. Dr. Sheff did not testify as to Dr. Gal's observations of Diamond or her injuries and did not express the opinion of Dr. Gal regarding Diamond's injuries, and McGraw's defense counsel cross-examined Dr. Sheff. Dr. Sheff specifically testified that he did not treat or observe Diamond at AAEC, and his testimony was based on Diamond's x-rays and his experience as a veterinarian. McGraw has not established that he was denied his right of confrontation by the admission into evidence of Dr. Sheff's testimony regarding the definition of words in the medical report, that dogs have vertebrae, or that Diamond's x-rays showed fractures. *See Ackerman*, 51 N.E.3d at 189, 195 (holding that an autopsy report was nontestimonial for confrontation purposes and its admission did not violate the defendant's confrontation rights, that the testimony of a pathologist who was not present for the autopsy regarding the autopsy report similarly did not

violate the defendant's confrontation rights, and noting that, even if the autopsy report was inadmissible, the pathologist could have still testified to his own independent opinion based upon his review of the autopsy report, that while the rule would not allow the pathologist to merely recite facts and conclusions that were stated in the autopsy report, the pathologist would have been allowed to testify that his review of the autopsy reports and photographs led him to the conclusion that the manner of a victim's death was homicide among other opinions he formed independently).

[14] Even if the admission of Dr. Sheff's testimony was improper, we conclude that any error is harmless beyond a reasonable doubt. Violations of the right to confrontation do not require reversal if the State can show beyond a reasonable doubt that the error did not contribute to the verdict, and a harmless error analysis turns on a number of factors available to the reviewing court including the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case. *Koenig*, 933 N.E.2d at 1273. The evidence establishes that McGraw threw Diamond, and witnesses heard Diamond cry, whine, and whimper, observed that she would not move, and believed she was injured. Martin and N.G. testified that McGraw threw Diamond's cage with Diamond in it onto the street, and N.G. believed McGraw had killed her dog. Martin testified that she observed McGraw lift Diamond over his head and throw her

over a fence which was six or seven feet tall onto an asphalt driveway. Martin heard Diamond cry and "thought she was gone," and Diamond "scooted up" under Martin's vehicle and was whining and whimpering. Transcript Volume II at 118. One of the responding police officers testified that Diamond "looked hurt" and was whining. *Id.* at 165. Officer Nowinski testified that she could tell Diamond was injured. The medical report stated Diamond had a "[f]ractured right humerus (medial condyle)," State's Exhibit 25, and Diamond's x-rays were admitted into evidence. Dr. Sheff's testimony that Diamond had sustained a fracture was cumulative of the information contained in the admitted medical report and x-rays and the testimony of those who observed McGraw's actions and Diamond's behavior at the scene of the offense demonstrated that Diamond had been injured. Any error in admitting the evidence challenged by McGraw, given that the evidence is cumulative of other evidence and the strength of the prosecution's case, is harmless beyond a reasonable doubt and did not make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process presenting an undeniable and substantial potential for harm. We do not disturb the jury's verdict.

## *Conclusion*

[15] For the foregoing reasons, we affirm McGraw's conviction for torturing or mutilating a vertebrate animal as a level 6 felony.

[16] Affirmed.

Najam, J., and Kirsch, J., concur.