## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 30 2020, 10:36 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Paul J. Podlejski
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Steven Hosler
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dominique Q. Brisker, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | October 30, 2020 <br><br> Court of Appeals Case No. 20A-CR-707 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable David A. Happe, Judge <br><br> Trial Court Cause No. 48C04-1711-F4-2743 |

**Crone, Judge.**

## Case Summary

[1] Dominique Q. Brisker appeals his conviction, following a jury trial, for level 4 felony unlawful possession of a firearm by a serious violent felon. Brisker asserts that the trial court violated his Sixth Amendment right to confrontation and abused its discretion in admitting certain evidence at trial. Finding no constitutional violation or abuse of discretion, we affirm.

## Facts and Procedural History

[2] On the afternoon of November 1, 2017, Malachi Carter and his girlfriend went to a gas station in Madison County to meet two friends, Antonio Moore and Jason Nave. Moore and Nave sat in their cars with a space between them, and Carter exited his vehicle and stood between the two cars. Carter's girlfriend stayed in the vehicle. As Carter stood between the cars, other individuals approached him, including Brisker and Deonta Anderson. Carter knew both Brisker and Anderson well. Carter and Anderson began fighting and shoving each other. Brisker then pulled out a gun, and Anderson took the gun from him and fired at Carter as Carter ran away. Carter was not hit by any bullets, but Moore was struck in the leg with a bullet. Carter ran across the street and hid under a porch. As he hid, Carter could see and hear that Anderson and Brisker were looking for him.

[3] Police were dispatched to the scene based upon a report of "shots fired," and Anderson Police Department Detective Chris Frazier was the first to arrive. Tr. Vol. 4 at 87. A female witness identified Carter, who at the time was walking

back toward the gas station, as being involved in the altercation because she "saw him running" from the scene. *Id.* at 91. Carter was immediately taken into custody and transported to the Anderson Police Department, where he gave a detailed recorded statement identifying himself as a victim, Anderson as the shooter, and Brisker as the individual who originally possessed the gun that Anderson used to shoot at Carter. Carter identified both men in a photo array, and his girlfriend identified Brisker in a photo array.[1]

[4]     Five days after the shooting, on November 6, 2017, the State charged Brisker with level 4 felony unlawful possession of a firearm by a serious violent felon and level 6 felony pointing a firearm. In a separate case, the State charged Anderson with the attempted murder of Carter. That same day, Carter went to the Anderson Police Department and met with Detective Norman Rayford. Carter recanted his earlier statement identifying Brisker and Anderson, and he denied being the victim of any shooting. When Carter recanted, he stated that he was not going to be a witness or "go to court on nobody," and he refused to be a "snitch." State's Forfeiture Ex. 1. Carter implored Detective Rayford to tell Anderson and Brisker that he was not cooperating with police. *Id.*

[5]     On March 28, 2018, the State filed a motion for a forfeiture by wrongdoing hearing. In the motion, the State alleged that it would prove, by a preponderance of the evidence, that both Brisker and Anderson engaged in or

_____

[1] Police also spoke to Moore, who was in the hospital, but he refused to provide any information regarding the shooting.

encouraged wrongdoing that was intended to, and did, procure the unavailability of Carter as a witness for the purpose of preventing Carter from testifying. The trial court granted the motion and held a forfeiture hearing on May 15 and 31, 2018. On August 3, 2018, the court issued its order finding that "the State has met its burden to establish forfeiture by wrongdoing" and that both Brisker and Anderson "forfeited their rights to confront and cross-examine" Carter, resulting in the State being permitted "to introduce at trial otherwise hearsay statements from [Carter], subject to possible limitations of relevance" and the Evidence Rule 403 balancing test. Appellant's App. Vol. 2 at 87-88.

[6] The case proceeded to trial, and Carter's out-of-court statements to police, including his recorded statement identifying Brisker as the individual who possessed the gun, were admitted during the State's case-in-chief over Brisker's continuing objection. The defense subsequently called Carter as a witness, and he claimed that his initial statement to police was incorrect and based upon faulty assumptions on his part, and that he was high on drugs at the time of the statement. The jury thereafter found Brisker guilty of level 4 felony unlawful possession of a firearm by a serious violent felon.[2] Following a hearing, the trial court sentenced Brisker to twelve years, with ten years executed and two years suspended to probation. The trial court also imposed a six-month

---

[2] The State dismissed the pointing a firearm charge.

sentence for two counts of contempt due to Brisker's disruptive and extremely disrespectful behavior in court. This appeal ensued.

## Discussion and Decision

[7] Brisker asserts that the trial court abused its discretion in admitting into evidence Carter's out-of-court statements to police. In general, a trial court has broad discretion in ruling on the admissibility of evidence, and we will disturb a trial court's evidentiary rulings only upon an abuse of discretion. *Id*. *Speers v. State*, 999 N.E.2d 850, 852 (Ind. 2013), *cert. denied* (2014). An abuse of discretion occurs only where the court's decision is clearly against the logic and effect of the facts and circumstances, or when the court misinterprets the law. *Williams v. State*, 43 N.E.3d 578, 581 (Ind. 2015). We may affirm a trial court's evidentiary decision if it is sustainable on any basis in the record. *Barker v. State*, 695 N.E.2d 925, 930 (Ind. 1998).

[8] We first address Brisker's argument that the admission of Carter's out-of-court statements violated his Sixth Amendment right to confrontation. When a defendant contends that a constitutional violation has resulted from the admission of evidence, our standard of review is de novo. *Speers*, 999 N.E.2d at 852. The Sixth Amendment's Confrontation Clause provides, in relevant part, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. This right allows the admission of an absent witness's testimonial out-of-court statement only if the witness is unavailable and the defendant has had a prior opportunity

to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). However, "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of [the declarant's] prior testimonial statements.... The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Id.* at n. 9. And, our supreme court has clarified that claimed losses of memory at trial have no effect on availability for purposes of the Confrontation Clause:

> Although some courts and commentators contended that a witness who asserts an inability to recall any significant information is for all practical purposes unavailable for confrontation, this issue was settled in *United States v. Owens*, 484 U.S. 554, 558 (1988). In *Owens*, the Supreme Court ... held that as long as the declarant testifies the Confrontation Clause has been satisfied even if the declarant is unable to recall the events in question. *Id.* at 558.... The feigned or real absence of memory is itself a factor for the trier of fact to establish, but does not render the witness unavailable. Rather, as *Owens* explained, it is a factor for the trier of fact to consider in evaluating the witness's current and earlier versions. *Id.* at 559....We conclude that a witness who is present and responds willingly to questions is "available for cross-examination" as that term is used in *Crawford* in discussing the Confrontation Clause, just as *Owens* observed that such a witness is "subject to cross-examination" under the common understanding of that phrase. We believe no significance attaches to these slightly different verbal formulations.

*Fowler v. State*, 829 N.E.2d 459, 466 (Ind. 2005) (parallel citations omitted), *cert. denied* (2006).

Brisker concedes that Carter in fact appeared and testified at trial. Defense counsel was able to thoroughly examine Carter regarding his out-of-court statements to police identifying Brisker as possessing the gun, and his subsequent statement and current trial position recanting that identification. Brisker explained away his prior statements saying, "[A]fter I later did a[n] evaluation of what happened that day … and kinda sobered up, I couldn't really tell exactly … where the bullets was comin' from[,]" and upon reflection, "No, I did not see [Brisker] with any handgun or any kind of other weapon that day." Tr. Vol. 5 at 79. This is more than sufficient for the purposes of the Confrontation Clause, and we fail to see how Brisker can now claim that his right to confrontation was violated due to the admission of Carter's out-of-court statements.[3]

Aside from his confrontation claim, Brisker briefly argues that the trial court abused its discretion in failing to limit the admissibility of Carter's out-of-court statements to impeachment evidence as opposed to substantive evidence. However, there is nothing in the record to suggest that defense counsel made a specific objection on that basis or requested an admonishment or a jury

---

[3] Brisker premises the entirety of his Sixth Amendment argument on the trial court's ruling, both pretrial and at the outset of the State's case-in-chief, that Carter's out-of-court statements to police would be admitted as substantive evidence pursuant to the "forfeiture by wrongdoing" doctrine, which provides that if the defendant's own wrongdoing caused the declarant to be unavailable to testify at trial, then the defendant has forfeited his right to confront that witness. *Scott v. State*, 139 N.E.3d 1148, 1153-54 (Ind. Ct. App. 2020), *trans. denied*; *see also* Ind. Evidence Rule 804(b)(5) (known as the "forfeiture by wrongdoing" hearsay exception, which permits admission of a "statement offered against a party that has engaged in or encouraged wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness for the purpose of preventing the declarant from attending or testifying."). However, because Carter did, in fact, attend trial and testify, we find Brisker's claim that his right to confrontation was somehow violated by the trial court's ruling regarding forfeiture to be wholly inapposite.

instruction limiting the use of any of Carter's out-of-court statements to impeachment only. Accordingly, any challenge to the use of Carter's prior statements as substantive evidence is waived. *See Lawrence v. State*, 959 N.E.2d 385, 389-90 (Ind. Ct. App. 2012) (citing *Humphrey v. State*, 680 N.E.2d 836, 839 (Ind.1997) (failure to object or request proper admonishment as to limited admissibility of evidence results in waiver of error on appeal)), *trans. denied*; *see also* Ind. Evidence Rule 105 ("If the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly.").

[11] Waiver notwithstanding, it is well settled that a prior out-of-court statement is admissible as substantive evidence if the declarant testifies at trial and is subject to cross-examination concerning the statement, and the statement is "an identification of a person shortly after perceiving the person." Ind. Evidence Rule 801(d)(1)(C). Carter's prior statements to police identifying Brisker as the individual who possessed the gun, check all of those boxes, and, on the record before us, Brisker would be unable to formulate a viable argument that they do not. The trial court did not abuse its discretion in admitting the statements. *See Kendall v. State*, 790 N.E.2d 122, 127-28 (Ind. Ct. App. 2003) (witness's prior statement to police identifying defendant as driver of car used in crime was admissible as substantive evidence under Evidence Rule 801(d)(1)(C) where witness recanted her prior identification statement at trial identifying defendant), *trans. denied*; *see also Robinson v. State*, 682 N.E.2d 806, 810 (Ind. Ct.

App. 1997) (no error in allowing police detective to testify regarding witness's identification of defendant where witness testified at trial and recanted his prior identification statement and claimed that his prior statement to police was a fabrication). Based upon the foregoing, we affirm Brisker's conviction.

[12] Affirmed.

Robb, J., and Brown, J., concur.