

FILED

Nov 29 2023, 9:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. O'Connor
O'Connor & Auersch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Tyler Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Deshawn Luckett,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 29, 2023

Court of Appeals Case No.
23A-CR-1166

Appeal from the Marion Superior
Court

The Honorable Shatrese Flowers,
Judge

Trial Court Cause No.
49D28-2210-F4-28899

**Opinion by Judge Riley.**
Judges Crone and Mathias concur.

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Deshawn Luckett (Luckett), appeals his convictions for two Counts of unlawful possession of a firearm by a serious violent felon, Level 4 felonies, Ind. Code § 35-47-4-5(c); possession of a controlled substance, a Level 6 felony, I.C. § 35-48-4-7(a); and resisting law enforcement, a Class A misdemeanor, I.C. § 35-44.1-3-1(a)(3).

We affirm.

## ISSUES

Luckett presents this court with three issues, which we consolidate and restate as the following two issues:

> (1) Whether the trial court properly admitted text messages sent to Luckett by a person who did not appear at trial; and

> (2) Whether the trial court abused its discretion when it denied his motion to exclude texts and photographs that were late in being disclosed to the defense.

## FACTS AND PROCEDURAL HISTORY

On August 23, 2022, the Indianapolis Metropolitan Police Department's Violence Reduction Team was surveilling an apartment complex near 37th and Central Streets in Indianapolis. Officers observed a man driving a white Toyota Tundra pickup truck stop briefly at the complex, meet with someone, and then drive away. The truck was subsequently observed running a stop sign, and Officer Mollie Johanningsmeier (Officer Johanningsmeier) initiated a traffic

stop of the truck, which pulled over in the 3000 block of Ruckle Street. Officer Johanningsmeier was wearing a body camera which recorded the traffic stop. As Officer Johanningsmeier parked her cruiser behind the truck, the driver, later identified as Luckett, opened the driver's side door, exited, and momentarily stood in the truck's open doorway. Officer Johanningsmeier was approximately one car length away from Luckett as she gave several loud verbal commands to Luckett to get back into his truck. Luckett, who was looking straight at the officer while she issued these commands, began to walk and then to run away through the yard of a nearby home. Officer Johanningsmeier and Officer Frank Gunn (Officer Gunn), who had arrived as Officer Johanningsmeier was issuing her verbal commands to Luckett, gave chase but lost sight of Luckett. As the other officer continued her search for Luckett, Officer Gunn returned to the truck and observed in plain view a handgun on the driver's side seat, a Draco "banana clip" firearm on the rear passenger side floorboard, and a baggie of what was later determined to be ADB-BUTINACA, a controlled substance analog of ADB-PINACA, in the doorhandle of the driver's side door. (Transcript p. 136). The truck was towed from the scene.

[5]     Officer Robert Camphor (Officer Camphor), also with the Violence Reduction Team, discovered that the truck was a rental and learned from the rental company that it had been rented by Candyce Breedlove (Breedlove). Further investigation revealed that Breedlove was associated with Luckett. On August 25, 2022, Officer Camphor procured Luckett's photograph from the Bureau of

Motor Vehicles (BMV) and showed it to Officer Johanningsmeier, who recognized Luckett as the man who had exited the white Toyota Tundra and fled from her two days prior. After making this identification, Officer Johanningsmeier found Luckett's Facebook account which had photographs of him on it.

[6] On October 25, 2022, the State filed an Information, charging Luckett with two Counts of Level 4 felony unlawful possession of a firearm by a serious violent felon, Level 6 felony possession of a controlled substance, and Class A misdemeanor resisting law enforcement. On October 26, 2022, Luckett's initial hearing took place at which time the trial court set his jury trial for January 11, 2023. On January 3, 2023, the trial court granted Luckett's motion to continue his jury trial, and his trial was reset for February 22, 2023.

[7] On January 5, 2023, investigators obtained a search warrant for the Toyota Tundra. A search of the truck uncovered no additional firearms or drugs, but two cellphones were recovered from the middle console area. Investigators did not submit the cellphones to the digital forensics unit for a complete data extraction, as there was an approximately six-month delay in obtaining results from the unit. On February 3, 2023, the trial court granted Luckett's motion for a speedy trial. The trial court noted in the chronological case summary that Luckett's speedy trial deadline was April 25, 2023. Luckett's previously scheduled trial date of February 22, 2023, was not rescheduled after the trial court granted his speedy trial motion.

[8] On February 22, 2023, the trial court convened Luckett's one-day jury trial. Officer Johanningsmeier testified that she had a good view of Luckett's face before he fled, and she identified Luckett in open court as the man she had encountered on August 23, 2022. Images from Luckett's Facebook account of Luckett's face and body and an image of Luckett and Breedlove hugging were admitted during Officer Johanningsmeier's testimony, and the officer testified that she recognized Breedlove in the image. The officer confirmed that the man seen in the Facebook images was the same man who she had encountered on August 23, 2022. Officer Gunn related that he had seen Luckett's profile before Luckett had fled the scene of the traffic stop, and Officer Gunn identified Luckett in open court as the man he had seen flee.

[9] During trial, Luckett moved to exclude certain photographs and text messages. The photographs were of the screens of the two cellphones recovered from the Toyota Tundra which showed the identification screens for the two phones, both of which exhibited "Deshawn Luckett" therein, a CashApp account logged into "De Luck", a Facebook account logged into under the name of "Deshawn Luckett", Instagram accounts on both cellphones logged into the account "og_luck, with one login page displaying images of Luckett, and an image of Luckett which had been taken twelve days before the traffic stop. (Exh. Vol. pp. 37-43). Luckett also moved to exclude text messages from Breedlove to Luckett arranging for Breedlove to rent Luckett a truck for August 23, 2022. Luckett objected to the admission of Breedlove's texts, arguing that because Breedlove was not a witness, the admission of her hearsay statements

violated his right to confrontation. Luckett also objected to the admission of both the photographs and the Breedlove/Luckett texts on the basis that the photographs had only been discovered to the defense the day before trial and that the texts had been discovered to the defense on the first day of trial after lunch. Luckett's counsel argued that there was no time to look through the contents of the cellphones and that it was "unreasonable" for Luckett to request a continuance, as the jury had been empaneled and the defense was prepared to go forward with Luckett's trial. (Tr. p. 151).

[10] In arguing for the admission of the photographs and the texts, the deputy prosecutor cited the backlog at the digital forensics unit and represented to the trial court that he had only learned the day before trial that investigators had gained access to the two cellphones by correctly guessing Luckett's password. The deputy prosecutor further represented that the State had only discovered the texts between Luckett and Breedlove arranging the rental of the truck while looking through the cellphones at lunch on the first day of trial. As to Luckett's hearsay/confrontation objection, the prosecutor argued that the admission of the texts was necessary to show the context of Luckett's non-hearsay texts to Breedlove arranging the rental of the truck.

[11] The trial court ruled that the photographs of the cellphones were admissible. As to Breedlove's texts, the trial court observed that, although they were late disclosed, Luckett had requested a speedy trial and that exclusion was an extreme remedy. The photographs and the texts were admitted over Luckett's objections.

At the close of the evidence, the jury found Luckett guilty, and Luckett subsequently admitted to being a serious violent offender. On April 27, 2023, the trial court held Luckett's sentencing hearing. The trial court imposed an aggregate nine-year sentence, with two years suspended.

Luckett now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standards of Review*

Luckett challenges the admission of the Breedlove/Luckett texts and the cellphone photographs. We generally review the trial court's admission of evidence under an abuse of discretion standard. *Speers v. State*, 999 N.E.2d 850, 852 (Ind. 2013). However, inasmuch as Luckett's claims of error in the admission of evidence are based upon the violation of a constitutional right, those are matters that we review de novo. *See id*.

### II. *Admission of the Texts and Photographs*

### A. *Confrontation Clause and Hearsay*

Luckett first claims that the trial court abused its discretion in admitting Breedlove's texts into evidence, arguing that doing so violated his right under Article 1, section 13 of the Indiana Constitution to confront the witnesses against him. Luckett also argues that the admission of Breedlove's texts violated the prohibition against hearsay. We do not agree.

Article 1, section 13 of our state constitution provides that "[i]n all criminal prosecutions, the accused shall have the right . . . to meet the witnesses face to

face." Our supreme court has long recognized this basic trial right as having deep roots in the common law. *Church v. State*, 189 N.E.3d 580, 592 (Ind. 2022). Our state's Confrontation Clause permits the admission of an absent witness's out-of-court statement only where the witness is unavailable and where the defendant has had an opportunity to cross-examine the witness. *Galloway v. State*, 188 N.E.3d 493, 498 (Ind. Ct. App. 2022), *trans. denied*. In addition, hearsay, which is an out-of-court statement offered for the truth of the matter asserted, is generally inadmissible. Indiana Evid. Rules 801(c), 802.

[17] However, Indiana courts have recognized that out-of-court statements by a non-appearing witness are not hearsay if they are offered only to provide context for other admissible statements. *See Williams v. State*, 930 N.E.2d 602, 608-09 (Ind. Ct. App. 2010) (holding that the recorded statements of a confidential informant arranging drug deals with Williams were not hearsay because they only provided context for Williams' own recorded statements), *trans. denied*; *see also Williams v. State*, 669 N.E.2d 956, 958 (Ind. 1996) (holding that Article 1, section 13 was not violated by the admission of the recorded statements of a confidential informant conversing with Williams because the informant's statements were not admitted for the truth of the matters asserted and "[i]t was the statements made by Williams that really constituted the evidentiary weight of the conversation").

[18] The trial court admitted into evidence the following text stream between Luckett and Breedlove, which we present in toto and unaltered for spelling and punctuation:

Luckett: Grl go check on that truck

Breedlove: [Thumbs up emjoi] . . . What days are you tryna get it

Luckett: Ig tmrw morning till next Tuesday

Breedlove: Ok

Luckett: How much is it

Breedlove: Idk yet

Luckett: Pick up truck

Breedlove: Wat location

Luckett: Keystone

Breedlove: I have to clean at 11 . . . Tmrw

Luckett: Ok make Reservation for the morning see how much it is first

Breedlove: [Image of rental options]

Luckett:  U put the code n

Breedlove: Yes . . . [Image of rental options]

Luckett: Get the truck

Breedlove: The pick up?

Luckett: Yes

Breedlove: [Image of reservation information]

Luckett: What was the total

Breedlove: [Image of reservation information]

Luckett: Plus the 200 deposit

Breedlove: [Shrugging shoulders emoji . . . I don't rent cars idk lol

Luckett: Lol yea so wt time

Breedlove: 9:30

(Exh. Vol. pp. 45-49). On appeal, Luckett does not contend that his own texts were inadmissible hearsay or that Breedlove's texts were irrelevant. Luckett's identity was the primary issue at trial, and the State offered this text stream to show that he was the person driving the Toyota Tundra truck that Officer Johanningsmeier stopped on August 23, 2022. In the text stream, Luckett guides the rental of the truck through Breedlove, and therefore, his statements truly "constituted the evidentiary weight of the conversation." *Williams*, 669 N.E.2d at 958. Breedlove's responses merely showed the context of Luckett's own statements arranging for the rental of the truck, and, therefore, we conclude that her statements were admissible for a reason other than for the truth of the matter asserted. *See id.*; *Williams*, 930 N.E.2d at 608-09. Luckett's argument that Breedlove's texts were inadmissible as part of the abolished doctrine of "res gestae" is unpersuasive. *See Swanson v. State*, 666 N.E.2d 397, 398 (Ind. 1996) (holding that the doctrine of res gestae, allowing the admission of evidence of uncharged bad acts to complete the story of the charged offense, was abolished by the adoption of the Indiana Rules of Evidence). We have concluded that Breedlove's texts were nonhearsay and so were not inadmissible under the Indiana Rules of Evidence, and Luckett provides no authority for his proposition that the concept of res gestae applies to hearsay which does not involve uncharged bad acts.

However, even if the trial court's admission of Breedlove's texts had been in error, we would still not reverse Luckett's convictions. "The improper

admission [of evidence] is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction." *Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012). Officers Johanningsmeier and Gunn identified Luckett in open court as the man who was driving the Toyota Tundra and fled from their presence on August 23, 2022. In addition, Officer Johanningsmeier's body camera footage which showed Luckett's face and physique as well as his BMV photograph and Facebook images of his face and body were admitted into evidence, all of which permitted the jury to make its own independent assessment of Luckett's identity. The jury also heard evidence that Breedlove had rented the truck Luckett was seen driving on August 23, 2022, and that Breedlove and Luckett were associated.

[21] We are aware that where, as here, no limiting instruction was provided to the jury that it should only consider Breedlove's texts as context for Luckett's own statement, we presume that the jury considered the evidence as substantive evidence. *See Jethroe v. State*, 262 Ind. 505, 511, 319 N.E.2d 133, 138 (1974) (holding that where the jury received no limiting instruction on its consideration of hearsay "the assumption must be that the jury considered the testimony as evidence of the truth of the matters asserted"). However, Luckett did not request any limiting instruction at trial, and, on appeal, he makes no claim of prejudice relative to the admission of the challenged evidence. In light of the substantial independent evidence in the record pointing to Luckett's

identity and his failure to demonstrate any prejudice flowing to him as the result of the admission of Breedlove's texts, we conclude that any claimed error was, at best, harmless. *See Hoglund*, 962 N.E.2d at 1238.

B. *Late Disclosure*

[22] Luckett further contends that the trial court erred when it denied his motion to exclude and admitted the Breedlove/Luckett text stream and the cellphone photographs because that evidence was late disclosed to the defense. A trial court has broad discretion to manage discovery, and we presume that the court acted fairly and equitably. *State v. Lyons*, 211 N.E.3d 500, 505 (Ind. 2023). This court will reverse a trial court's ruling on late disclosed evidence only where the trial court has committed clear error resulting in prejudice. *Berry v. State*, 715 N.E.2d 864, 866 (Ind. 1999). "Exclusion of the evidence is an extreme remedy and is to be used only if the State's actions were deliberate and the conduct prevented a fair trial." *Id*. Five factors guide our review of a trial court's rulings on late disclosed evidence, namely, "when the parties first knew of the evidence; the importance of the evidence; the prejudice resulting to the opposing party; the appropriateness of a less severe remedy such as a continuance; and whether the opposing party would be unduly surprised and prejudiced by admission." *Perryman v. State*, 80 N.E.3d 234, 249 (Ind. Ct. App. 2017).

[23] In addressing Luckett's claim, we first observe that Luckett did not request a continuance after being presented with the challenged evidence. The failure to request a continuance in conjunction with a motion to exclude evidence, where

a continuance may be an appropriate remedy, results in the waiver of a claim of error due to a discovery violation. *Warren v. State*, 725 N.E.2d 828, 832 (Ind. 2000) (finding Warren's claim based on the State's failure to comply with Marion County's local automatic discovery deadlines to be waived because he did not request a continuance). Here, although Luckett claims the State committed a discovery violation by not tendering the challenged evidence in accordance with the Marion County Local Court Rules, he did not request a continuance, and, therefore, he waived his claim of error. *See id*.

[24] Regardless of Luckett's waiver of the issue, we do not agree with him that the trial court abused its discretion when it declined his motion to exclude the late disclosed text stream and photographs. While the State's methods for obtaining the data on the cellphones found in the white Toyota Tundra may not represent the model of orderly trial preparation, the State disclosed the evidence as soon as it became aware of it. Luckett does not direct our attention to anything in the record demonstrating the State's bad faith or deliberate misconduct meant to prejudice him, nor does Luckett assert that he was unduly surprised by the discovery of his texts with Breedlove on his cellphone. Luckett similarly fails to argue that the challenged evidence was of overwhelming significance to his conviction.

[25] Luckett's claim of prejudice is that he was forced into the untenable position of either going into trial unprepared or waiving his right to a speedy trial. We are not persuaded by this argument, as Luckett was in possession of all the challenged evidence as of his trial date, February 22, 2023, and his speedy trial

deadline was April 25, 2023. Due to Luckett's failure to seek a continuance, although the trial court referenced the fact that Luckett had made a speedy trial request in denying his motion to exclude, there is nothing before us in the record indicating that Luckett could not have had an adequate continuance to address the late disclosed evidence and still be brought to trial before his speedy trial deadline expired. Given these circumstances, we conclude that the trial court acted within its discretion when it declined to exclude the text stream and photographs. *See Perryman*, 80 N.E.3d at 249 (affirming the trial court's denial of Perryman's motion to exclude evidence and a witness disclosed for the first time during his trial, after the jury was empaneled).

## CONCLUSION

Based on the foregoing, we conclude that the trial court's admission of the State's late disclosed exhibits did not violate Luckett's confrontation right or the prohibition against hearsay and that the trial court acted within its discretion in denying Luckett's motion to exclude that evidence.

Affirmed.

Crone, J. and Mathias, J. concur